FIRST AFRICAN METHODIST EPISCOPAL SOCIETY *vs.*
BENJAMIN F. BROWN.

Suffolk.    March 22, 1888. — June 21, 1888.

Present : MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Deed — Caveat in Registry of Deeds — Fraud — Cloud upon Title —
Specific Performance — Laches.*

A paper signed by a grantor and filed by him in the registry of deeds, alleging that
the conveyance was obtained from him by fraud and that he shall dispute its
validity, does not, in the absence of confirmatory facts or of proceedings for
more than six years to enforce his rights, constitute a cloud upon title such as
will bar specific performance.

BILL IN EQUITY, filed March 2, 1887, for the specific perform-
ance by the defendant of an agreement to purchase land.

The bill alleged that the plaintiff, on December 1, 1886, en-
tered into an agreement in writing with the defendant for the
sale and purchase of the land, which agreement, after reciting
that the land was conveyed to the plaintiff by one John Scott,
by deed dated August 29, 1879, and recorded with Norfolk Deeds,
lib. 513, fol. 219, provided for its conveyance to the defendant
by a good and clear title.    The answer set up that the plaintiff
was unable to give a good and clear title, because Scott, the
plaintiff's grantor, had placed upon the records in the Norfolk
Registry of Deeds a paper, dated September 27, 1880, signed by
Scott with his mark, and acknowledged before a justice of the
peace on the same day, which, after reciting his conveyance of
the land to the plaintiff as set forth in the agreement, proceeded
as follows :

" Now, this is to give notice that the said deed of conveyance
to said First African Methodist Episcopal Society, recorded in
said Norfolk Registry, lib. 513, fol. 219, was obtained from me
by fraud and covin ; that I never intended to convey said prop-
erty to said society ; and I hereby notify any person taking title
from said society, that I shall dispute the validity of said deed,
and that in case of my decease I have left instructions in my will
for the prosecution of proceedings for the recovery of said prop-
erty from said society."

Hearing on the pleadings, before *C. Allen,* J., who reported the case for the consideration of the full court, as follows.

"This is a bill in equity to enforce the performance by the defendant of an agreement to buy a piece of land of the plaintiff. The case came on to be heard before me on the bill, answer, and amended answer. No issue of fact was thus raised, but I asked counsel if defendant was aware, at the time of making his agreement to purchase, of the existence of the document or claim of plaintiff's grantor, to the effect that the deed was obtained from him by fraud. Counsel said defendant was not aware of it, and I so assume. It seemed to me that the validity of plaintiff's title depended on the determination of the question of fraud, and that, in view of the claim of Scott, the plaintiff's grantor, and of the document which he put on record, it was unreasonable to require the defendant to take the risk of investigating and litigating that question, or the chance of the objection being pressed. I therefore dismissed the bill, and make this report, which is to stand only in case the plaintiff duly enters an appeal."

The case was argued at the bar in March, 1888, and afterwards was submitted on the briefs to all the judges.

*B. C. Moulton,* for the plaintiff.

*A. J. Pratt,* for the defendant.

DEVENS, J.   There is no provision by statute for filing in the registry of deeds any document of a character similar to that which Scott was permitted there to place upon record. It acquired no greater importance from being thus filed, nor did it for this reason constitute a cloud upon the title of the plaintiff. Pub. Sts. c. 126, § 13. *Nickerson* v. *Loud,* 115 Mass. 94. The question presented by the case at bar is, therefore, whether a mere assertion by the plaintiff's grantor, some seven years since, unsupported by any evidence or any subsequent action on his part, that the deed from him to the plaintiff was obtained by fraud, and that he shall dispute its validity, renders the plaintiff's title so doubtful that the defendant will not be compelled to accept it and comply with his contract to pay for the land. In *Nickerson* v. *Loud, ubi supra,* a paper signed and recorded in the registry of deeds by A., who was not the plaintiff's grantor, stating that certain real estate, the record title to which was in B., was held by B. subject to a trust in favor of A. and

others, and that A. would dispute any title that B. might attempt to make, was held not to constitute a cloud on the title. Whether recorded or unrecorded, such statements could not, under such circumstances, be evidence against B. or in favor of A., and it was held that B. was not entitled to an order directing the paper to be withdrawn by A. from the registry, or surrendered to him.

The general rule is well settled, that, in order to maintain a bill for specific performance of a purchase of land, the plaintiff must show that the title tendered by him is good beyond reasonable doubt. But a doubt must be reasonable, and such as would cause a prudent man to pause and hesitate before investing his money. It would be seldom that a case could occur where some state of facts might not be imagined which, if it existed, would defeat a title. When questions as to the validity of a title are settled beyond reasonable doubt, although there may be still the possibility of a defect, such mere possibility will not exempt one from his liability to complete the purchase he has made. *Hayes* v. *Harmony Grove Cemetery*, 108 Mass. 400. Thus, it might be conceived in a case similar to that at bar that the plaintiff's grantor, from infancy, insanity, or similar cause, was without legal capacity to have conveyed to it, but the plaintiff would not therefore be required to prove affirmatively the existence of such capacity before he could insist on the performance by the defendant of his contract. It would be often practically impossible for a party to negative all objections which might be imagined, and which, if they existed, would defeat his title. Whether a party shall be compelled to perform a contract for the purchase of land is often, therefore, a matter within the discretion of the court; not certainly of arbitrary or capricious discretion, but, as said Mr. Justice Story, " of that sound and reasonable discretion which governs itself as far as it may by general rules and principles, but which at the same time withholds or grants relief, according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties." Story Eq. Jur. § 742, and authorities cited. Where an appointment was made by a husband and wife to their eldest daughter, under a settlement giving them successive life estates with remainder to their children as they should appoint, and, in default of such appointment to all their children, the

husband and wife appointed the whole estate to their eldest daughter, and a short time after such appointment, with the eldest daughter, made a mortgage, under the foreclosure of which the plaintiff claimed title.   One of the younger children had given notice to the plaintiff not to complete his title, nor to pay the purchase. money, as the appointment and mortgage had been made in fraud of the settlement.   It was held that a mere allegation of this sort, which was only a statement of a possibility, which every one could see, on looking at the transaction, might have existed without a single fact being brought forward to impeach the deeds, and which had not been followed by any proceedings to set them aside, did not afford any reason why the contract of purchase should not be performed.   *Green* v. *Pulsford*, 2 Beav. 70.   This case is restated with approval, and followed by Lord Chancellor Truro, in *Grove* v. *Bastard*, 1 DeG. M. & G. 69, where the inquiry suggested by it arose incidentally on a question of costs.

The precise question here discussed has never been decided in this court, but an examination of our cases on the general subject will show that, in all in which a defendant in a bill for specific performance has been held not bound to accept a title, facts have appeared showing that the property was or might be subjected to adverse claims such as might reasonably be expected to expose the purchaser to controversy in order to maintain his title.   *Jeffries* v. *Jeffries*, 117 Mass. 184.   A doubt, says Lord Eldon, "must be a considerable, a rational doubt," and such as would induce a prudent man to pause and hesitate.   *Stapylton* v. *Scott*, 16 Ves. 272. Although the remark is made with reference to a doubt as to the construction of a deed, it has equal application where it arises from a possible or conceivable state of facts.   We have found no case where a stranger to a contract, even if the grantor from whom the party seeking to enforce it derives title, has been able by mere assertion practically to destroy the marketability of the title which he has granted, and thus to throw such a stain upon it that for purposes of sale it is valueless.   *Kostenbader* v. *Spotts*, 80 Penn. St. 430.   *Vreeland* v. *Blauvelt*, 8 C. E. Green, 483. But even if in any case we should be willing to hold that mere threats would make a title doubtful, the case at bar has this peculiar feature, that for more than six years the injured party, as

he alleges himself to be, has slept upon his rights, and made no attempt to assert them.   Where one takes a fraudulent title with notice thereof, or of facts and circumstances which fairly put him on his inquiry as to whether a fraud has not been committed, he is not indeed held to be an innocent purchaser, even if he has paid full value.   But where no facts or circumstances either of suspicion or doubt have been brought to his attention, he cannot be deemed to have lost that character, even if he has heard of an assertion, made more than six years ago, like that of the plaintiff's grantor, unsupported by any evidence, and unsustained during that time by any proceedings to avoid or annul the conveyance.   *Carroll* v. *Hayward,* 124 Mass. 120.   *Hopkins* v. *Langton,* 30 Wis. 379.                    *Decree for the plaintiff.*