JOHN J. MARTIN *vs.* HELEN HAMLIN & another.

Suffolk.   March 15, 1900. — May 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Defective Title — Specific Performance.*

The validity of a foreclosure sale, made not at the instance of the mortgagee or for the purpose of getting payment of the mortgage debt, but for the benefit of a purchaser of the equity under a defective conveyance, and for the purpose of curing that defect by cutting off the interest of a legal owner, that owner and his only known attorney being residents of foreign countries, so distant that the notice of the sale could not be expected to reach them, is so doubtful that no one should be compelled to take a title depending upon it for validity.

BILL IN EQUITY for the specific performance of a written agreement, by which the parties undertook to exchange certain parcels of real estate, the plaintiff's being known as the " Hotel Alexandra " in Boston. At the trial in the Superior Court, before *Gaskill*, J., the defendants requested a ruling that they were not required to take the offered title ; but the court ruled otherwise; and ordered a decree requiring specific performance of the contract. The facts appear in the opinion.

*R. M. Morse, (L. Bass, Jr.* with him,) for the defendants.

*H. G. Allen,* for the plaintiff.

BARKER, J. Upon the facts appearing in the bill of exceptions the defendants requested the court to rule that they were not required to take the offered title, but the court ruled otherwise. This was in effect a ruling of law that they were required to take the title.

Both parties concede that a mere possibility or suspicion of a defect in title will not prevent the ordering of specific performance, and that it will not be enforced when there is a fairly reasonable doubt as to the title. See *Hayes* v. *Harmony Grove*

*Cemetery,* 108 Mass. 400 ; *Cushing* v. *Spalding,* 164 Mass. 287 ; *Chauncey* v. *Leominster,* 172 Mass. 340.

The transfer was to be made and a deed was tendered on July 1, 1897. The defendants concede that if the foreclosure of June 28, 1897, was valid as against Lauritz C. Bistrup, the plaintiff could have given perfect title to the whole property.

Bistrup was a Danish officer residing in Greenland. On April 24, 1894, he had inherited an undivided interest of one fiftieth part in the land. This interest fell to him as one of several heirs of Emil C. Hammer, who died seised of one undivided half of the land. On July 2, 1874, Hammer and the owner of the other half had made a power of sale mortgage of the whole property to a corporation, and this mortgage, reduced to the amount of $50,000 of principal, overdue since 1890, was outstanding when the agreement sought to be enforced was made. Interest had been paid promptly, and there had been no breach of the mortgage, except the non-payment of the principal.

On May 11, 1884, Bistrup had given a power of attorney, not under seal and not acknowledged, to a resident of Copenhagen, granting " the full power for me and in my place and stead to administer on all finances in relation to myself, to have, to receive and to receipt for all monies and other valuables, to collect and, if necessary, to sue and institute proceedings according to law for the same, to compromise and to settle before or after such proceedings may have commenced, to represent me in the settlement of estates to which I may be heir, and to make all necessary arrangements for the administration of such estates, to demand, to hold and to receipt for all monies coming to me from such estates ; in fact, to do and perform all and everything requisite; and all that my attorney shall do or perform shall be binding upon me as if I had personally done the same." Some three or four years before the making of the agreement sought to be enforced, a deed of Bistrup's interest in the land had been made under this power of attorney, and the person who claimed under that deed supposed that he had bought up the interests of all the Hammer heirs, and he had been in uninterrupted possession of the property during three or four years.

The bill of exceptions has no statement as to whether during that period Bistrup had received any payments from his

attorney, or had been informed of the deed made under the power. The holder of the Bistrup deed was ready to convey his title to the plaintiff, or as the plaintiff might direct.

The agreement between the plaintiff and the defendants bore date April 17, 1897, and performance was to be made on or before May 1, 1897. Each party employed competent conveyancers to examine the title, and the conveyancers agreed that it was defective because Bistrup's power of attorney was not under seal or acknowledged. The defendant's conveyancers also advised that its language did not authorize a conveyance of real estate. Thereupon the time for performance was extended to July 1, 1897. The plaintiff's conveyancer was of opinion that a good title could be obtained by arranging with the mortgagee to foreclose the mortgage, and he made such arrangements, and foreclosed the mortgage by a sale under the power on July 28, 1897. The title tendered to and declined by the defendants on July 1, 1897, came under this foreclosure sale. This plan of making title by foreclosure was communicated to the defendants in May, and their counsel replied that it would be a serious question whether they could accept such a title. Before the sale and after it was advertised they repeatedly gave notice that they should refuse to accept a title made under the proposed foreclosure.

The purpose of the foreclosure was not to get in the money due upon the mortgage, but it was procured by the plaintiff, and allowed by the mortgagee to be made by the plaintiff's conveyancer, for the purpose of cutting off the Bistrup title, and of curing some other defects. The other defects, it is now agreed, could have been cured before July 1, 1897, if the defendants had not previously notified the plaintiff that they would not take a title made under the foreclosure. The mortgagee was informed of the situation, and it was part of the plan of foreclosure, upon which the plaintiff's conveyancer was authorized by the mortgagee to make it, that upon its completion a mortgage for $50,000 should be given back to the mortgagee. The price bid at the sale was $70,000, of which the sum of $20,000, furnished by the plaintiff, was paid in cash to the mortgagee. After deducting the expenses of the sale the mortgagee paid one half of the $20,000 to each of the two

parties from whom the plaintiff had a contract to convey to him the land. The purchaser at the foreclosure sale deeded to the plaintiff and he tendered to the defendants a deed which they declined, on the ground that they were not required to take the title obtained under the foreclosure.

It is an inference of law from the facts stated that the power of sale was not exercised by the mortgagee of its own instance, or for the purpose of getting in the mortgage debt, but for the purpose of cutting off the possible interest of Bistrup in the land. In other words, the use of the power was lent by the mortgagee to the plaintiff for that purpose. Bistrup was in Greenland and his attorney in Copenhagen. Bistrup's power of attorney, such as it was, had been given some ten years before he inherited his interest in the land. It did not appear that he ever had known of his interest, or of its conveyance under his power, or that he had received payment on account of that conveyance. The mortgagee disposed of the money received from the sale by paying over to the party holding under the Bistrup deed the share which was Bistrup's, if that deed was void.

All of these circumstances were known to the mortgagee, to the plaintiff whose conveyancer had charge of the sale, and to the purchaser who acted for the plaintiff and conveyed to him. The defendants also had full knowledge, so that the title tendered to them would not in their hands be that of a purchaser without notice.

If the Bistrup deed was not clearly void, the title made under his power was so doubtful that equity would not require the defendants to accept it. The foreclosure was made upon the theory that the legal estate in one fiftieth of the land was still in Bistrup, and the purpose of the sale was to cut off that interest. If he was yet seised of the legal title, the mortgagee in making the sale acted as his trustee and agent, and was bound to execute the trust with a due regard to his interest. *Hood* v. *Adams*, 124 Mass. 481, 484. *Briggs* v. *Briggs*, 135 Mass. 306, 309. A mere literal compliance with the terms of the power, if the mortgagee failed to do its duty to Bistrup, would not make the sale valid in favor of one charged with knowledge of the delinquency. *Clark* v. *Simmons*, 150 Mass.

357, 359. See also *Montague* v. *Dawes*, 14 Allen, 369; *Thompson* v. *Heywood*, 129 Mass. 401, 403; *Fenton* v. *Torrey*, 133 Mass. 138.

It is not now necessary to decide that a foreclosure sale is void if made, not at the instance of the mortgagee or for the purpose of getting payment of the mortgage debt, but for the benefit of a purchaser of the equity under a defective conveyance, and for the purpose of curing that defect by cutting off the interest of a legal owner, especially when that owner and his only known attorney are residents of foreign countries, so distant that the notice of the sale could not be expected to reach them. See *Robertson* v. *Norris*, 1 Giffard, 421, 424.

It is enough to hold that the validity of such a sale is so doubtful that no one should be compelled to take a title depending upon it for validity. The ruling requested by the defendants should have been given. *Exceptions sustained.*