FOSTER, HALL AND ADAMS COMPANY *vs.* FREDERICK C. SAYLES.

Suffolk.    November 12, 1912. — January 28, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Contract*, Performance and breach.  *Mortgage*, Of real estate: foreclosure.

In an action for money had and received to recover the amount of a deposit made at an auction sale at which the plaintiff was declared to be the purchaser of certain real estate under an agreement that if the title was not good there would be no sale and the money would be refunded, in accordance with the established law of this Commonwealth as to what constitutes a good title the plaintiff must prove that the title offered by the defendant was not good beyond such a reasonable doubt as would cause a prudent man to pause and hesitate before investing his money.

In an action to recover the amount of a deposit which was paid upon a purchase of real estate at auction and was to be returned if the title to the real estate was not good, where the title offered by the defendant was derived from a foreclosure sale under a mortgage and the plaintiff contends that such title was not good, either because it was a matter of doubt whether the foreclosure sale was in accordance with the terms of the power of sale in the mortgage, or because it was a matter of doubt whether the mortgage foreclosed had not been discharged before the foreclosure sale, the question whether either of these doubts was well founded cannot be determined finally in the absence of the parties interested, and the question to be passed upon is whether the title offered by the defendant was so doubtful that no one should be compelled to take it or be held to have been wrong in refusing to take it.

In an action to recover the amount of a deposit paid upon a purchase of real estate on the ground that the title to the real estate offered by the defendant was not good, where the title offered by the defendant was derived from a foreclosure sale under a mortgage and the plaintiff contended that it was a matter of doubt whether the foreclosure sale complied with the terms of the mortgage because it did not appear that thirty days' written notice had been given of default as alleged to have been required by the mortgage, the defendant contended that such a notice was not required and that the giving of such a notice would have been futile.  It appeared that the mortgage had been given to secure the payment of certain bonds, that an article of the mortgage provided that, in case of a default or of a failure to perform the requirements of the mortgage, which should continue for thirty days after written notice thereof had been given by the trustee under the mortgage to the company issuing the bonds, the principal of the bonds at the election of the trustee should become due unless such default or failure was waived by a majority of the bondholders, and that a subsequent article of the mortgage, which created the power of sale, provided that "in case of default or failure as aforesaid" the trustee might sell the mortgaged property.  The foreclosure sale took place nearly five years after the maturity of the bonds secured by the mortgage.  *Held,* that it was at least a matter of

doubt whether thirty days' written notice of a default was not required by the terms of the mortgage although the bonds were overdue, and that, if it was a fact that a written notice of default would have served no useful purpose, such fact would not dispense with the necessity of giving such a notice if it was required by the terms of the power of sale.

In an action to recover the amount of a deposit paid upon a purchase of real estate on the ground that the title to the real estate offered by the defendant was not good, where the title offered by the defendant was derived from a foreclosure sale and the plaintiff contended that it was a matter of doubt whether the mortgage foreclosed had not been discharged before the foreclosure, it appeared that three and a half years before the foreclosure sale the defendant, who was the owner of all the bonds secured by the mortgage, in the belief that he also was the owner of the equity of redemption of the mortgaged property, requested and obtained from the trustee under the mortgage a deed reciting these facts and purporting to "cancel and discharge the mortgage" and to "release and quitclaim" to the defendant, his heirs and assigns the property conveyed by the mortgage. Just before the publication of notice of the foreclosure sale the defendant executed and delivered to the trustee a paper, reciting that the deed of release above described was void because the defendant was not as he erroneously had supposed the owner of the equity of redemption, disclaiming all rights under such deed and assigning all rights acquired under it to the trustee. *Held,* that, in the absence of the persons who were the owners of the equity of redemption, it could not be adjudged that it was free from doubt that the deed purporting to discharge the mortgage did not discharge it as to the defendant.

One, who has agreed to purchase certain real estate if the title is good, is not bound to take a doubtful title merely because from a commercial point of view it might be thought that his title would not be likely to be disturbed.

CONTRACT for money had and received amounting to $5,072.39 according to an account annexed. Writ dated February 13, 1907.

In the Superior Court the case was tried before *McLaughlin,* J., without a jury. It appeared that the money sought to be recovered was deposited by the plaintiff as a part payment on account of the purchase of certain lots of real estate which the defendant caused to be sold at auction on June 8, 1904, and that before the sale the auctioneer, after reading the conditions of the sale, stated in the presence of the defendant that "if the title [to the real estate] was not a good title there would be no sale and the money would be refunded." The material facts shown by the evidence are stated in the opinion. At the close of the evidence the defendant asked the judge to rule that on the facts shown the title tendered by the defendant to the plaintiff was a good and marketable title. The judge refused to make this ruling. The defendant also asked the judge to rule that the plaintiff was not entitled to recover. The judge declined so to rule, and ruled that

the title tendered by the defendant was defective and that the plaintiff therefore was excused from the performance of its contract to purchase. He found for the plaintiff in the sum of $5,502.15; and the defendant alleged exceptions.

*G. W. Anderson,* for the defendant.

*G. L. Mayberry,* for the plaintiff.

LORING, J. The only question presented in this case is whether the title offered by the defendant to the plaintiff was "a good title" which it was bound to accept.

The statement of what a good title consists in has been usually made in suits brought by a vendor to compel specific performance of a contract of sale. But the question is the same in an action at law founded on the fact that the title offered by the vendor was not a good one and an action is brought by the vendee to recover back a deposit which has to be returned if the title was not a good title. The requisites of a good title were well stated by Devens, J., in *First African Methodist Episcopal Society* v. *Brown,* 147 Mass. 296, 298: "The general rule is well settled, that, in order to maintain a bill for specific performance of a purchase of land, the plaintiff must show that the title tendered by him is good beyond reasonable doubt. But a doubt must be reasonable, and such as would cause a prudent man to pause and hesitate before investing his money. It would be seldom that a case could occur where some state of facts might not be imagined which, if it existed, would defeat a title. When questions as to the validity of a title are settled beyond reasonable doubt, although there may be still the possibility of a defect, such mere possibility will not exempt one from his liability to complete the purchase he has made." That was then and is now the settled law of the Commonwealth. See *Hayes* v. *Harmony Grove Cemetery,* 108 Mass. 400, and cases cited; *Conley* v. *Finn,* 171 Mass. 70; *Martin* v. *Hamlin,* 176 Mass. 180; *Close* v. *Martin,* 208 Mass. 236.

The title offered by the defendant in the case at bar came from a foreclosure sale of a mortgage executed on February 18, 1896, by the Massachusetts Car Company to T. Quincy Browne, Trustee, to secure an issue of bonds amounting to $120,000, which fell due on January 22, 1898. The foreclosure sale took place on December 15, 1902, and the property was then bid in by and conveyed to the defendant. The plaintiff's objections to the

title were twofold. First, that it was a matter of doubt whether
the foreclosure sale was made in accordance with the power of
sale contained in the mortgage; second, that it was also a matter
of doubt whether the mortgage foreclosed had not been dis-
charged before the foreclosure sale took place. In the absence of
the parties interested in those questions a final determination
cannot be made upon them, as was done in *Chesman* v. *Cummings*,
142 Mass. 65, where all parties interested were before the court.
The question is not whether the plaintiff is right in its objections,
but whether, in view of these objections the title offered by the
defendant was so doubtful that no one should be compelled to
take it or be held to have been wrong in refusing to take it. *Martin*
v. *Hamlin*, 176 Mass. 180.

1. We are of opinion that for lack of a thirty days' written notice
of default it was at least doubtful whether the foreclosure sale
was made in accordance with the power of sale given in the mort-
gage to the trustee. The mortgagee's affidavit of sale did not state
that such a notice was given and the defendant did not offer the
plaintiff any sufficient evidence that it was given. His contention
is that such a notice was not necessary, at any rate under the cir-
cumstances of this case, which are as follows: By the seventh article
of the mortgage it is provided that: "In case any default shall be
made by the Company in the payment of said bonds issued here-
under or of any of them when they fall due and payable or in the
payment of any installments of interest on any of the said bonds,
or in case the Company shall fail faithfully to observe and per-
form any of the requirements made of it by these presents or by
said bonds and such default or failure shall continue for the space
of thirty days after written notice thereof has been given by the
Trustee to the Company," then the principal of the bonds
shall at the election of the trustee become due unless such default
or failure is waived by a majority of the bondholders. By the
eighth article it is provided that: "In case of default or failure as
aforesaid," the trustee may take possession of the mortgaged
premises and carry on the business of the mortgagor. Then fol-
lows the ninth article which creates the power of sale about the
execution of which in the case at bar (it is the defendant's conten-
tion) there is reasonable doubt. The ninth article begins in these
words: "In case of default or failure as aforesaid," the trustee in

place of taking possession as provided above, may sell etc.   The
defendant now contends that "default or failure as aforesaid"
in the eighth and ninth articles does not refer to a default or fail-
ure which continues for thirty days after written notice thereof
as provided in the seventh article because: (first) the thirty days'
written notice provided for by the seventh article was to be given
in order to enable the trustee to declare the bonds due before
their maturity and at the time of the foreclosure here in question
the bonds were overdue; and (second) it is provided in the con-
dition of the mortgage that the mortgagor shall have possession
"until default" and the first article is a covenant to pay the
bonds as they mature.   And (thirdly) because under the circum-
stances the giving of such a notice in the case at bar would have
been futile.

We take these up in their order.   (1) Although it is not plain
why it was thought wise to provide that a thirty days' written
notice of "default or failure" should be given if the bonds were
overdue, yet it is at least a matter of doubt whether that is not
what this article of the mortgage required.   The provision "in
case of default or failure as aforesaid" in the eighth article would
seem to refer to the default or failure described in the preceding
seventh article, and the same words in the ninth (the article here
in question) must have the same meaning there that they have
in the eighth.   (2) The suggestion that "in case of default or failure
as aforesaid" in the ninth article refers to the default in payment
only and not to a default in payment or a failure to perform any
other duty owed by the mortgagor is answered by the terms of the
provision.   (3) The peculiar circumstances of this case as to service
of the notice relied on by the defendant are these: The owner
of the equity of redemption at the time of the foreclosure sale
was the Ashburnham Manufacturing Company, a West Virginia
corporation.   This foreign corporation had appointed the com-
missioner of corporations its agent to accept service, and had
notified him to send notice of service to the defendant.   The fact,
if it was a fact, that the written notice which by the terms of the
power of sale had to be given, would not have served any useful
purpose, is not an answer to the objection that the power was not
duly complied with.   More than that, it will appear later on that
there was reason to believe that there had been a dispute as to

whether the defendant or the Ashburnham Manufacturing Company owned the equity of redemption. Under those circumstances, if the written notice of "default or failure" (which for the purposes of this argument the defendant must admit was a pre-requisite to a valid execution of the power of sale) was to be handed to the defendant as the representative of the Ashburnham Manufacturing Company claiming to own the equity of redemption, it was his duty (and all the more his duty because he owned all the mortgage bonds) to see to it that it reached those who were interested in protecting the rights of the Ashburnham Manufacturing Company as the possible owner of the equity of redemption. We are of opinion that the first objection taken by the plaintiff to the title offered it by the defendant was well taken.

2. We proceed to the consideration of the plaintiff's other objection, namely, that it was a matter of doubt whether the mortgage had not been discharged by the mortgagee before the foreclosure sale took place. The facts are these: On May 8, 1899, Browne, the trustee under the mortgage, executed and delivered to the defendant a deed by which, after reciting the execution of the mortgage, and the facts that the defendant was the owner of all the bonds and had requested Browne "to cancel and discharge said mortgage and release and quitclaim said property," stated that Browne did "cancel and discharge the mortgage" and did "release and quitclaim" unto the defendant, his heirs and assigns, "the property thereby conveyed." Three and one half years later (in November, 1902, just before the first publication of notice of the foreclosure sale here in question), the defendant executed and delivered to Browne a paper by which, after reciting the execution of the mortgage and of the discharge and release just referred to, and after reciting the further fact that the discharge and release were executed and taken in the belief that the defendant "was the owner absolutely and in fee simple, subject to said mortgage, of the property therein described," but that the defendant "did not own the equity of redemption as believed, and was, and is now, the owner of the bonds secured by said mortgage, which bonds have not been in any part paid," and after reciting further that the defendant is advised by counsel that the instrument executed by Browne is void as a discharge and inoperative to assign the mortgage to

the defendant, thereupon the defendant disclaimed all right under the discharge and assigned all rights acquired under it to Browne. It appears by the second of these two papers that the first (the cancellation and discharge of the mortgage) was made because the defendant then believed that he owned the equity of redemption. It may well be that under these circumstances the first deed which conveyed the premises to the defendant free of the incumbrance of this mortgage would be construed to be a conveyance to him as owner of the equity of redemption. And in our opinion it is not altogether clear that a deed which is intended to be a cancellation and discharge of a mortgage coupled with a conveyance of the mortgaged property to one claiming to own the equity of redemption will operate as an assignment of the mortgage on the grantee's changing his mind and determining to abandon his claim to be the owner of the equity. Or rather that proposition is not so clear that we can adjudge that to be the legal result in the absence of those who as it turned out were the owners of the equity of redemption.

3. It was said orally at the argument that the title was sufficiently good to require the plaintiff to take it because the bonds which the mortgage secured amounted to $120,000 and the whole property (of which the plaintiff bought eight of fourteen lots) sold at the auction for $13,632.50. Apart from other objections to that argument, it is one founded upon considerations which cannot be entertained in this proceeding. The plaintiff was entitled to a good title as defined in our decisions, and not to one with respect to which from a commercial point of view it might be thought not to be likely that he would be troubled.

*Exceptions overruled.*