DERTAD GULESERIAN *vs.* PILGRIM TRUST COMPANY
(and a companion case [1]).

Middlesex.    December 9, 1953. — June 4, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, & SPALDING, JJ.

*Soldiers' and Sailors' Civil Relief Act. Mortgage,* Of personal property:
foreclosure. *Personal Property,* Ownership. *Contract,* For sale of
real estate, Interdependent contracts. *Real Property,* Encumbrance.
*Easement. Sale,* Contract of sale. *Auction. Words,* "Owner."

A foreclosure of a first mortgage of personal property also subject to a
second mortgage held by the trustees of a trust for the benefit of the
mortgagor's creditors was not defective by reason of the first mort-
gagee's failure to obtain a court order for foreclosure under the Federal
soldiers' and sailors' civil relief act of 1940, U. S. C. (1946 ed.) Title
50, Appendix, § 532, where it appeared that the mortgagor was a
corporation and that the trustees holding the second mortgage were
not in the military service, even if assenting creditors under the trust
or their assignees were: such creditors or assignees were not "owners"
of the property for the purposes of § 532. [433–434]
One who has agreed to purchase real estate free of encumbrances need
not accept a title clouded by purported easements of record reasonably
likely to involve him in litigation with the persons claiming them,
irrespective of their validity. [435–436]
A buyer of real estate sold at auction in foreclosure of a mortgage was
justified in refusing a deed tendered by the mortgagee and was en-
titled to a return of his deposit on the ground that there was a cloud
on the title and it was unmarketable where the notice of sale disclosed
that the premises were subject to a right of way reserved by the mort-
gagor's grantor giving access from a highway to land retained by that
grantor adjacent to the mortgaged premises, but did not disclose the
existence of a purported release of the same right of way later given
by the mortgagee to the mortgagor and a purported grant, recorded
simultaneously with the release, by the mortgagor of that right of
way to his grantor and also to four other persons who owned land ad-
jacent to the mortgaged premises or to the land retained by the mort-
gagor's grantor, and the release and grant were not mentioned at the
sale and were not shown to have come to the buyer's knowledge before
he contracted to purchase the premises. [436–437]

---

[1] The companion case is Pilgrim Trust Company *vs.* Dertad Guleserian.

In an action to recover deposits made by a buyer of a restaurant and its
   equipment and furniture at an auction sale at which the real estate
   and the personal property were sold separately, where it appeared
   that the purchase contracts were oral, that evidence would warrant a
   finding that the buyer's bids were made and accepted by the auctioneer
   on the understanding that unless the buyer could acquire both the
   real estate and the personal property he would not take either, and
   that he was entitled to a return of his deposit on the real estate con-
   tract because of a cloud on the title to the realty rendering it unmar-
   ketable, it was for the jury to determine whether the contracts were
   interdependent so that the buyer was entitled to a return of his de-
   posit on the personal property contract also even though the seller
   had tendered a good title to the personalty, or whether the contracts
   were independent so that the seller was entitled to retain the deposit
   under the personal property contract. [437–438]

Two ACTIONS OF CONTRACT. Writs in the Superior Court
dated March 3, 1949, and March 8, 1949, respectively.

The actions were tried before *Brogna,* J.

*John A. Daly,* (*Gregory Mooradkanian* with him,) for
Guleserian.

*Francis T. Leahy,* for Pilgrim Trust Company.

SPALDING, J. These are two actions of contract. The
first is brought by Guleserian, hereinafter called the buyer,
and the second, a cross action, is brought by the Pilgrim
Trust Company, hereinafter called the seller. The buyer
sought to recover $10,000 representing a $5,000 deposit on
a contract to purchase real estate and a $5,000 deposit on
a contract to purchase personal property. The buyer's
declaration contains six counts. The basis for recovery
under counts 1 and 5 is that the seller could not transfer a
good title to the real property, and the basis for count 2 is
that it could not convey a good title to the personal prop-
erty. Counts 3, 4, and 6 are framed on the theory that even
if title to one of the properties was good the plaintiff did
not have to accept it since the contracts were interdependent.
The seller sought damages for the buyer's refusal to accept
a deed and bill of sale of the real estate and personal prop-
erty respectively.

The cases come here on exceptions by the buyer to the
action of the judge in directing a verdict for the seller on

all counts in the buyer's declaration, in denying motions by the buyer for directed verdicts on these counts, and in limiting the issue on the first count of the seller's declaration to damages only, and on the seller's exception to the exclusion of certain evidence offered under that count touching the question of damages.

The contracts which gave rise to this litigation grew out of a public auction to foreclose mortgages on certain real and personal property owned by Wayland Ten Acres, Inc., hereinafter called Wayland. The seller as mortgagee held title to both the real and the personal property as security for the same mortgage debt. There was in addition a second mortgage on the personal property held by the trustees under a trust for the benefit of Wayland's creditors.

1. The buyer contends that the foreclosure of the personal property mortgage was defective by reason of the seller's failure to obtain the court order required by the soldiers' and sailors' civil relief act of 1940. U. S. C. (1946 ed.) Title 50, Appendix, § 532. It is conceded that no order of court for the foreclosure of this mortgage was ever obtained. Admittedly the mortgagor, Wayland, could not be in the military service, and it is conceded that the trustees who held the second mortgage were not in the military service. The sole basis for invoking the soldiers' and sailors' relief act is that the seller failed to prove that no assenting creditor of the trust for the benefit of creditors was in the military service. Furthermore, it is urged, an assenting creditor might have assigned his claim to a serviceman who could invoke the relief act to invalidate the foreclosure.

The act by its terms applies to personal property as well as real property, and there is no question that in a proper case a foreclosure held without a court order would be open to attack by one in the military service. We are of opinion, however, that § 532 of the act does not apply to persons such as the assenting creditors under the trust or their assignees, though they may be in the military service. Section 532 (1) reads in part, "The provisions of this section

shall apply only to obligations secured by mortgage . . .
upon real or personal property owned by a person in mili-
tary service . . . ." In this Commonwealth a mortgagee
has the legal title to the mortgaged property, subject to
defeasance, and in this aspect he is the "owner," but for
most purposes and according to popular understanding
the mortgagor is considered the "owner" of the mortgaged
property. *Crowley* v. *Adams*, 226 Mass. 582, 583. *Harlow
Realty Co.* v. *Cotter*, 284 Mass. 68, 70. *Boston* v. *Quincy
Market Cold Storage & Warehouse Co.* 312 Mass. 638, 648–
649. This view of the respective interests of the mortgagor
and the mortgagee is inherent in those cases which have
arisen under the act. The mortgagee holds the legal title
but it is clear that the mortgagor who holds the equity of
redemption is the "owner" for the purposes of § 532. See
*Hoffman* v. *Charlestown Five Cents Savings Bank*, 231 Mass.
324, 328–329; *Morse* v. *Stober*, 233 Mass. 223, 227; *John
Hancock Mutual Life Ins. Co.* v. *Lester*, 234 Mass. 559,
561–562; *Lynn Institution for Savings* v. *Taff*, 314 Mass.
380, 386. No case has been brought to our attention, and
we have found none, which holds the contrary. The bene-
ficial owners of the second mortgage whether they were
assenting creditors or assignees of such creditors cannot
fairly be said to be "owners" of the property within the
intendment of the act and would not be entitled to invoke
it. It follows, therefore, that the seller could give a good
title to the personal property without obtaining a court
order, and that the seller would be entitled to a directed
verdict on count 2 of the buyer's declaration except for the
question of the interdependency of the contracts which will
be discussed hereinafter.

2. We now turn to the question whether the judge erred
in directing verdicts for the seller on counts 1 and 5 to re-
cover the deposit on the contract to purchase the real es-
tate. The answer to that question turns on whether the
title offered by the seller was marketable. The notice of
sale set forth the terms of the mortgage which disclosed
that the conveyance was subject to the reservations con-

tained in a deed from H. J. Seiler Company, hereinafter called Seiler, dated September 21, 1945. Under that deed Seiler conveyed the real estate in question to Wayland and reserved "a right of way to pass and repass over the road now existing on the Westerly part of the granted premises for ingress and egress to said Recreation Grounds from Route No. 20, for purposes of its business . . .." Two other instruments having to do with rights over a roadway on the property were recorded simultaneously on July 15, 1946. One, executed on July 10, 1946, was a release by the seller as mortgagee to Wayland as mortgagor of "A right of way over the . . . premises for all lawful purposes." The other, executed on July 11, 1946, was a grant by Wayland of that easement for all lawful purposes to Seiler, and four persons who owned land adjacent to the property of either Seiler or Wayland. It is conceded that this right of way is the same as that reserved by Seiler in its deed to Wayland. These instruments or the contents thereof were not mentioned in the notice of sale, nor at the time of the auction, and there is no evidence that the buyer had any knowledge of their existence before he agreed to purchase the property. Whether the land is substantially the same as that described in the notice of sale depends on whether these undisclosed instruments created a cloud or an encumbrance which would render the title unmarketable.

The buyer was entitled to receive a good marketable title, that is, a title free from encumbrances beyond a reasonable doubt. He had no right to demand a title free from the mere possibility or suspicion of a defect. *First African Methodist Episcopal Society* v. *Brown,* 147 Mass. 296, 298. *Foster, Hall & Adams Co.* v. *Sayles,* 213 Mass. 319, 321. *Morse* v. *Stober,* 233 Mass. 223, 225–226. *Sullivan* v. *F. E. Atteaux & Co. Inc.* 284 Mass. 515, 520. *Ryder* v. *Garden Estates, Inc.* 329 Mass. 10, 12. The parties do not agree as to the legal effect of the instruments just referred to. The buyer contends they are effective to create rights and the seller contends they are a nullity. When there is doubt as to the validity of an alleged encumbrance or de-

fect the court will not resolve it unless all of the parties interested in the question are before the court. *Jeffries* v. *Jeffries,* 117 Mass. 184, 187. *Foster, Hall & Adams Co.* v. *Sayles,* 213 Mass. 319, 322. Compare *Chesman* v. *Cummings,* 142 Mass. 65. That is not the case here for the owners of the newly created easement, if such it is, are not before the court. As was said in *Jeffries* v. *Jeffries* where the seller sought specific performance of a contract to sell real estate, "It is not necessary that . . . [the buyer] should satisfy the court that the title is defective so that he ought to prevail at law; it is enough if it appear to be subject to adverse claims which are of such a nature as may reasonably be expected to expose the purchaser to controversy to maintain his title, or rights incident to it. . . . He ought not to be subjected, against his agreement or consent, to the necessity of litigation to remove even that which is only a cloud upon his title" (page 187). We think that principle is applicable here. Those who hold the purported grant of the easement may well attempt, whether or not successfully, to enforce the right for which they paid consideration and which they undoubtedly believe they have. It is hardly conceivable that they went to the trouble of having these instruments prepared, executed, and recorded as an exercise in futility.

We do not agree with the seller's contention that even if there is a valid right outstanding it creates no greater burden on the servient estate because the right is over a roadway already reserved for use by Seiler. Doubtless an increase in the number of persons who used the easement in connection with going to and from the Seiler property would be a change in degree only and would not overload the easement. *Baldwin* v. *Boston & Maine Railroad,* 181 Mass. 166, 169–170. Here, however, it is not a question merely of additional persons using an appurtenant right reserved to a dominant estate, but a question of creating a new right for the benefit of other landowners.

Whether or not the outstanding recorded claim is valid, the undisputed existence of the instruments raises a ques-

tion of additional rights in the property, not disclosed to the buyer, and there is therefore a cloud on the title which justified the buyer in refusing the deed tendered by the seller. It follows that the buyer's exceptions to the denial of motions for directed verdicts in his favor on the first and fifth counts must be sustained. The buyer's exception to that portion of the charge which limited the issue to damages only on the first count of the seller's cross action must likewise be sustained. In view of this conclusion the seller's exception to the exclusion of certain evidence under this count on the question of damages becomes immaterial and is overruled.

3. Verdicts were directed for the seller on counts 3, 4, and 6 of the buyer's declaration. In these counts the buyer sought to recover $10,000, the deposits under both contracts, on the theory that his bids were made on the understanding that unless he could acquire both the real estate and the personal property he would not take either. Since we have held above that the buyer was entitled to recover back his deposit because the title to the real estate was unmarketable these counts will become important in the retrial of the cases. If the contracts were interdependent, as the buyer contends, he would be entitled to recover both deposits, despite the fact that the seller tendered the buyer a good title to the personal property.

The contracts to purchase the properties were not in writing, and what the agreements between the auctioneer and the buyer were depends on oral evidence. There was evidence that before the auction the buyer in a conversation with the auctioneer told him that one property would be worthless without the other and the auctioneer assured the buyer that he would get both if he was willing to pay $70,000.[1] The personalty and the realty were sold separately at the auction. There was evidence that the buyer made no oral bid for either property, but that when the auctioneer reached the figure of $20,000 in the case of the

---

[1] The real estate involved was a restaurant, and the personal property was equipment and furniture used in connection therewith.

personal property, and $50,000 in the case of the real estate, he pointed to the buyer who in each case said nothing, and the auctioneer said "Sold." Shortly thereafter the buyer gave the auctioneer a check for $10,000 representing a $5,000 deposit on each contract. What the terms of the contracts were was a question for the jury. *Goldstein* v. *Katz*, 325 Mass. 428, 430. That is to say, it was for the jury to determine whether the buyer made his silent offers on condition of getting both properties and the auctioneer accepted the offers on that basis. If the jury finds that the sale of one of the properties was dependent on the buyer also acquiring the other the buyer is liable accordingly and if the title to one proves unmarketable both contracts are at an end and he can recover both deposits. The argument of the seller to the effect that the auctioneer had no authority to enter into contracts of this sort need not detain us. What the auctioneer's authority was would have a bearing on the seller's liability under the contracts but it cannot enlarge the undertaking of the buyer. His rights depend on what he agreed to do irrespective of whether the seller could be held.

From the foregoing it is obvious that the buyer's exceptions must be sustained and there must be a new trial, but the only triable issues are those arising out of counts 3, 4, and 6 (the dependency counts) of the buyer's declaration. If the jury finds for the seller on those counts, then the seller is also entitled to a directed verdict on count 2 (recovery of the deposit on the personal property contract) of the buyer's declaration, and the buyer would be entitled to directed verdicts on counts 1 and 5 (recovery of the deposit on the real estate contract) of his declaration. If, on the other hand, the jury finds for the buyer on counts 3, 4, and 6, then he is entitled to directed verdicts on counts 1, 2, and 5.

A verdict should be directed for the buyer on the first count of the declaration in the seller's cross action.

*So ordered.*