NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11742

LINDA PINTI & another[1]  vs.  EMIGRANT MORTGAGE COMPANY, INC., &
another.[2]


Middlesex.     January 8, 2015. - July 17, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Mortgage, Foreclosure, Real estate.  Real Property, Mortgage,
    Sale.  Sale, Real estate.  Notice, Foreclosure of mortgage.
    Declaratory Relief.  Practice, Civil, Declaratory
    proceeding, Summary judgment.



    Civil action commenced in the Superior Court Department on
January 31, 2013.

    The case was heard by Maureen B. Hogan, J., on motions for
summary judgment.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Richard M.W. Bauer (Stefanie A. Balandis, Amanda B. Loring,
& Geoffry Walsh with him) for the plaintiffs.
    Howard M. Brown (Sarah Ann Smegal, Tom Looney, & Lauren
Solar with him) for Harold Wilion.
    Michael P. Robinson for Emigrant Mortgage Company, Inc.

_____

    [1] Lesley Phillips.

    [2] Harold Wilion.

The following submitted briefs for amici curiae:
James P. Long, pro se.
Daniel D. Bahls & Courtney Clemente for Community Legal Aid.
Grace C. Ross, pro se.

BOTSFORD, J.  In 2012, the defendant Emigrant Mortgage Company, Inc. (Emigrant), foreclosed on the mortgage of the plaintiffs Lesley Phillips and Linda Pinti by exercise of the power of sale contained in the mortgage.  Thereafter, the plaintiffs filed this action in the Superior Court against Emigrant and the defendant Harold Wilion, the purchaser of the property at the foreclosure sale, seeking a declaratory judgment that the sale was void because Emigrant failed to comply with paragraph 22 of the mortgage, which concerns the mortgagee's provision of notice to the mortgagor of default and the right to cure, and also the remedies available to the mortgagee upon the mortgagor's failure to cure the default, including the power of sale (notice of default provisions).  We agree with the plaintiffs that strict compliance with the notice of default provisions in paragraph 22 of the mortgage was required as a condition of a valid foreclosure sale, and that Emigrant failed to meet the strict compliance requirement.  Accordingly, we reverse the allowance of the defendant Emigrant's motion to

dismiss and of the defendant Wilion's motion for summary judgment.[3]

Background.[4]  Phillips purchased a condominium unit (property) in Cambridge in 1982.  In 2005, she transferred title to the property by quitclaim deed to herself and her spouse, Pinti, as tenants by the entirety.  On March 13, 2008, Pinti and Phillips granted a mortgage on the property to Emigrant to secure a $160,000 loan.[5]  Paragraph 22 of the mortgage provides that, prior to acceleration of the loan following any breach of the mortgage by the plaintiffs, Emigrant is required to notify the plaintiffs of "(a) the default; (b) the action required to cure the default; (c) a date, not less than [thirty] days from the date the notice is given to [the plaintiffs], by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the mortgage]."  Paragraph 22 further provides that such notice must inform the plaintiffs "of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or

---

[3] We acknowledge the amicus briefs submitted by James P. Long, Community Legal Aid, and Grace C. Ross.

[4] The facts are drawn from the summary judgment materials before the motion judge.

[5] Linda Pinti was a party to the note underlying the mortgage, but Lesley Phillips was not.

any other defense of [the plaintiffs] to acceleration and sale"

(emphasis added), and adds that upon failure to cure the

default, Emigrant may invoke "the statutory power of sale."[6]

---

[6] Paragraph 22 of the mortgage provides in full:

"Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than [thirty] days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

"If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it."

In August and September of 2009, the plaintiffs failed to make the monthly mortgage payments that were due. On September 29, 2009, Emigrant sent a notice of default to the plaintiffs pursuant to paragraph 22. The notice stated that the plaintiffs had failed to make monthly mortgage payments, demanded payment of a sum sufficient to satisfy the outstanding amount by December 28, 2009, and noted that the mortgagee could invoke the statutory power of sale if the plaintiffs failed to cure the default in the time allowed. Finally, the notice stated that "notice is hereby given that [the plaintiffs] <u>have the right to assert in any lawsuit for foreclosure and sale the nonexistence of a default or any other defense [they] may have to acceleration and foreclosure and sale</u>" (emphasis added).

In 2011, Pinti sent Emigrant a "qualified written request" (QWR) that asked Emigrant to identify the holder of the plaintiffs' mortgage and the owner of Pinti's loan.[7] The letter also requested copies of any assignment of the plaintiffs' mortgage, and of Pinti's promissory note "in its current condition showing all endorsements and/or allonges." Emigrant's

---

[7] A "qualified written request" (QWR) is "a written correspondence" that "includes . . . the name and account of the borrower" and "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (2012).

response to the QWR, dated August 22, 2011, indicated that ESB-MH Holdings, LLC (ESB-MH), owned the loan, but that Emigrant held and serviced the loan. The response enclosed a copy of Emigrant's assignment of the plaintiffs' mortgage and note to ESB-MH; the assignment was signed by Filippo Ruggiero, "Vice President" of Emigrant. It appears on the face of the assignment that Ruggiero executed it on November 30, 2009, but Emigrant's response to the QWR asserts that "the assignment transferring ownership of the note and mortgage to [ESB-MH] has not been recorded and the original note and mortgage, as well as the assignment of the mortgage[,] are in the possession of [Emigrant,] which is prosecuting the foreclosure action as the holder and servicer of the loan." Emigrant's response to the QWR also enclosed Pinti's note with an allonge indicating that the note had been paid to the order of ESB-MH without recourse by Emigrant, and then endorsed in blank without recourse by ESB-MH.

Emigrant published a notice of foreclosure sale regarding the plaintiffs' property in the Boston Herald on June 12, 19, and 26, 2012. Wilion purchased the property at the foreclosure sale held on August 9, 2012, and obtained a foreclosure deed from Emigrant dated September 10, 2012. Wilion then initiated a summary process action against the plaintiffs in the District Court.

On January 31, 2013, the plaintiffs filed the present action against the defendants in the Superior Court. The plaintiffs' complaint sought a judgment declaring that the foreclosure sale was void, and asserted multiple theories supporting this claim, two of which are relevant to this appeal: (1) Emigrant's September 29, 2009, notice of default did not comply with paragraph 22 because it did not explicitly inform the plaintiffs of "the right to bring a court action to assert the non-existence of a default or any other defense of [the plaintiffs] to acceleration and sale," as required by the paragraph; and (2) Emigrant did not hold the relevant mortgage and promissory note when it foreclosed on the property. In addition, the complaint sought a judgment declaring that Wilion failed to comply with the prerequisites for initiating a summary process action on the ground that Wilion, to whom Emigrant sold the property, did not have superior title to the property because Emigrant did not lawfully foreclose.[8]

Emigrant filed a motion to dismiss the plaintiffs' complaint under Mass. R. Civ. P. 12 (b) (1) and (6), 365 Mass. 754 (1974). Separately, Wilion filed a counterclaim seeking a judgment declaring that the foreclosure and foreclosure sale

---

[8] The complaint also sought injunctive relief against Wilion to preclude him from pursuing a summary process action against the plaintiffs or from offering the property for sale. The plaintiffs' request for a preliminary injunction was denied.

were valid and, consequently, that Wilion possessed superior title to the property by virtue of the foreclosure deed. Shortly thereafter, Wilion filed a motion for summary judgment with respect to the plaintiffs' complaint and his counterclaim, and the plaintiffs filed a cross motion for summary judgment in their favor on both their complaint and Wilion's counterclaim.

After a hearing, a judge in the Superior Court allowed Wilion's motion for summary judgment and denied the plaintiffs' cross-motion. The judge rejected the plaintiffs' argument that Emigrant's notice of default rendered the foreclosure void, reasoning that Emigrant was not required strictly to comply with a term of the mortgage, such as the notice of default and right-to-cure provisions of paragraph 22, that had no direct relationship to the power of sale. The judge also determined there was no genuine factual dispute that Emigrant validly held the mortgage and the note at the time of the foreclosure sale. In accordance with her decision, a judgment entered in favor of Wilion on his counterclaim that declared the foreclosure of the mortgage and the foreclosure sale were valid and, therefore, that Wilion held good title to the property. In a separate decision, the judge also allowed Emigrant's motion to dismiss for reasons substantially similar to those in her summary judgment decision. The plaintiffs timely appealed, and we transferred the appeal to this court on our own motion.

Discussion. 1. Standard of review. "We review a grant of summary judgment de novo to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Juliano v. Simpson, 461 Mass. 527, 529-530 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). "Because our review is de novo, we accord no deference to the decision of the motion judge." DeWolfe v. Hingham Centre, Ltd., 464 Mass. 795, 799 (2013). De novo review also applies to the judge's dismissal of the plaintiffs' complaint under Mass. R. Civ. P. 12 (b) (1) and (6). See Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 676 (2011). See also Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).

2. Compliance with paragraph 22. The plaintiffs argue that Emigrant was required to conduct the foreclosure sale in strict compliance with paragraph 22. They reason that under this court's decisions, compliance with the terms of the mortgage describing the steps that lead up to foreclosure, beginning with the notice of default provision spelled out in paragraph 22, is a necessary component of the power of sale provided in the mortgage as well as of the statutory power of

sale set out in G. L. c. 183, § 21 (§ 21).[9] Conversely, the defendants contend that this court's decision in U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 422 (2014) (Schumacher), concerning the notice of default and right-to-cure notice provisions of G. L. c. 244, § 35A (§ 35A), and the relationship between § 35A and the power of sale in § 21, dictates that strict compliance with the analogous contractual notice of default provision of paragraph 22 was not required because like § 35A, paragraph 22 is not part of the power of sale.  Agreeing

---

[9] General Laws c. 183, § 21 (§ 21), provides:

"The following 'power' shall be known as the 'Statutory Power of Sale', and may be incorporated in any mortgage by reference:

"(POWER.)

"But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity" (emphasis added).

with the motion judge, they argue that Emigrant's notice of default was required only to comply with paragraph 22 substantially, not strictly, and that the notice sent by Emigrant to the plaintiffs met this standard. Even if we were to assume that Emigrant's notice did qualify as "substantial compliance" with the notice of default provisions of paragraph 22, we disagree that such compliance was sufficient for a valid foreclosure sale in this case; strict adherence to the notice of default provisions in the paragraph was required.

"Massachusetts does not require a [mortgagee] to obtain judicial authorization to foreclose on a mortgaged property." U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 645-646 (2011) (Ibanez). Accordingly, a mortgagee may conduct a foreclosure by exercise of the statutory power of sale set out in § 21, where, as here, the mortgage itself gives the mortgagee a power of sale and includes by reference the statutory power. See Ibanez, supra at 646. Under the terms of the statutory power of sale, the power may be exercised "upon any default in the performance" of a condition of the mortgage, such as the mortgagor's failure to pay the note underlying the mortgage. G. L. c. 183, § 21. Exercise of the power entitles a mortgagee to sell the mortgaged property at public auction, convey the property to the purchaser in fee simple, "and such sale shall forever bar the mortgagor and all persons claiming under him

from all right and interest in the mortgaged premises, whether at law or in equity." Id. See Ibanez, supra. Section 21 expressly requires, however, that to effectuate a valid foreclosure sale pursuant to a power of sale, the mortgagee must "first comply[] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale."

This court has recently reemphasized the point that in light of "the substantial power that the statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight, we adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms'"; the failure to do so results in "no valid execution of the power, and the sale is wholly void." Ibanez, 458 Mass. at 646, quoting Moore v. Dick, 187 Mass. 207, 211 (1905). See Pryor v. Baker, 133 Mass. 459, 460 (1882) ("The exercise of a power to sell by a mortgagee is always carefully watched, and is to be exercised with careful regard to the interests of the mortgagor"). This is true with respect to terms that are connected to the power of sale contained in the mortgage instrument itself,[10] and to terms

---

[10] Moore v. Dick, 187 Mass. 207, 210-212 (1905), quoted in U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 646 (2011) (Ibanez), was such a case. Others include, e.g., McGreevey v. Charlestown Five Cents Sav. Bank, 294 Mass. 480, 483-484 (1936); Smith v. Provin, 4 Allen 516, 518 (1862); Roarty v. Mitchell, 7 Gray 243, 244 (1856).

contained in § 21, the statutory power of sale, or in one of "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" to which § 21 refers.[11]

Wilion asserts, correctly, that in a number of our foreclosure cases requiring strict compliance with mortgage terms relating to a power of sale, the terms at issue were connected to the foreclosure sale itself. See McGreevey v. Charlestown Five Cents Sav. Bank, 294 Mass. 480, 481, 484 (1936) (although mortgaged property was located in Medford, in Middlesex County, mortgage required foreclosure sale to be advertised and held in Suffolk County; advertisement in Medford newspaper complied with statutory requirement in G. L. [Ter. Ed.] c. 244, § 14, but did not comply with terms of mortgage, rendering foreclosure sale void); Moore, 187 Mass. at 210-212 (noncompliance with mortgage term identifying newspaper in which foreclosure sale was to be advertised rendered foreclosure sale void). But none of these cases indicates or even suggests that the court's holding turned on the fact that the terms of the mortgage with which the mortgagee failed to comply related

---

[11] See, e.g., Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 580-581 (2012); Ibanez, 458 Mass. at 647-648. See also Tamburello v. Monahan, 321 Mass. 445, 446-447 (1947) (power of sale referenced in mortgage was statutory power of sale; lack of compliance with requirement in G. L. [Ter. Ed.] c. 183, § 21, that sale be on or near mortgaged premises rendered foreclosure sale void).

directly to the foreclosure sale.  Rather, the point was the more general one that the terms of the power of sale, whatever they might be, demanded strict compliance.  Indeed, our cases have indicated consistently that the mortgagee, to effect a valid foreclosure sale, must strictly comply not only with the terms of the actual power of sale in the mortgage, but also with any conditions precedent to the exercise of the power that the mortgage might contain.  See Roarty v. Mitchell, 7 Gray 243, 243-244 (1856) (where mortgage provided that upon default of payment by mortgagor, mortgagee "may enter and take possession of said premises immediately, and may sell and dispose of the same, on giving two weeks' notice thereof publicly," entry and possession by mortgagee were conditions precedent to exercise of power of sale; absence of entry and possession by mortgagee prior to foreclosure sale rendered it void); Smith v. Provin, 4 Allen 516, 516, 518 (1862) (mortgage contained power of sale to be exercised upon default by mortgagor, plus certain "conditions annexed to the power of sale," including requirement that within one year following foreclosure sale, mortgagee was to make and record affidavit of compliance with requirements of deed; mortgagee's failure to comply with this "annexed" condition rendered foreclosure sale void); Rogers v. Barnes, 169 Mass. 179, 184 (1897) ("Still the general rule is that conditions precedent to the execution of a power of sale must be strictly

complied with"); <u>McGreevey</u>, 294 Mass. at 484 ("This court has said that the general rule is that conditions precedent to the execution of a power of sale must be strictly complied with" [quotation and citation omitted]).  See also <u>Foster, Hall & Adams Co</u>. v. <u>Sayles</u>, 213 Mass. 319, 321-324 (1913).[12]

Emigrant contends that cases such as <u>Foster, Hall & Adams Co</u>., <u>supra</u>; <u>Moore</u>, <u>supra</u>; and <u>Smith</u>, <u>supra</u>, are inapplicable here because they predate the enactment of the statutory power of sale set forth in § 21, which was enacted in 1912.  See St. 1912, c. 502, § 6.  The argument is unavailing.  "Mortgages containing a power of sale existed at least as early as one hundred years before enactment of the statutory power."  <u>Eaton</u>

_____

[12] The court's decision in <u>Foster, Hall & Adams Co</u>. v. <u>Sayles</u>, 213 Mass. 319 (1913), illustrates the principle articulated in the cases cited in this paragraph.  The defendant in <u>Foster, Hall & Adams</u> obtained title to the mortgage property at issue through a foreclosure sale conducted pursuant to a power of sale in the mortgage.  <u>Id</u>. at 321-322.  The question before the court was whether the defendant's title could be proved valid where the provisions of the mortgage properly could be read to permit the power of sale to be exercised only after thirty days' notice of default had been given to the mortgagor, and there was no evidence presented that such notice had been given.  See <u>id</u>. at 322-323.  The court answered that the failure to provide the notice of default -- a requirement that was actually set out in an article of the mortgage separate from the article defining the power of sale -- provided a sufficient basis on which to conclude that the foreclosure sale probably was invalid.  <u>Id</u>. at 322-324.  In other words, although the court did not use the term "condition precedent," the court essentially treated the particular mortgage's provision for thirty days' notice of default to be given as such a condition -- that is, a prerequisite to a valid exercise of the power of sale.

v. <u>Federal Nat'l Mtge. Ass'n</u>, 462 Mass. 569, 580 n.16 (2012). As reflected in the title of the act that established the statutory power of sale, "An Act to shorten the forms of deeds, mortgages and other instruments relating to real property,"[13] § 21 was enacted to give the power of sale "statutory form to shorten the length of mortgage instruments." <u>Eaton</u>, <u>supra</u>. Nothing in the language or history of § 21 suggests that the Legislature intended the statute to disavow or alter this court's rulings that mortgage terms associated with the power of sale must be followed strictly. Indeed, § 21 by its terms offers explicit support for this conclusion, in expressly directing that one who seeks to conduct a foreclosure sale pursuant to the statutory power of sale must first comply with "the terms of the mortgage" and "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale," and taking care to list these two requirements separately. See note 9, <u>supra</u>.

In advancing their argument, the plaintiffs correctly do not contend that to effectuate a valid exercise of a power of sale contained in a mortgage, a mortgagee must demonstrate punctilious performance of every single mortgage term. As illustrated by the cases previously discussed, our decisions

---

[13] See St. 1912, c. 502.

suggest that the mortgage terms requiring strict compliance are limited to (1) terms directly concerned with the foreclosure sale authorized by the power of sale in the mortgage, and (2) those prescribing actions the mortgagee must take in connection with the foreclosure sale -- whether before or after the sale takes place.[14]  Insofar as the plaintiffs' mortgage is concerned, paragraph 22 begins by requiring notice of default to be given prior to any acceleration of the sums secured by the mortgage; then specifically prescribes the contents of the notice of default; and then provides that, if the default is not cured before the date specified in the notice, the mortgagee may invoke the statutory power of sale (as well as pursue other remedies).  As the paragraph is written, therefore, the sending of the prescribed notice of default is essentially a prerequisite to use of the mortgage's power of sale, because the

---

[14] As indicated previously in the text, this court in Rogers v. Barnes, 169 Mass. 179, 184 (1897), used the phrase, "conditions precedent to the execution of a power of sale" to describe the type of mortgage provision with which strict compliance is required, and the cases cited in support of that phrase included conditions that were not directly related to the foreclosure sale itself, but were to be performed by the mortgagee either before or after the sale.  See id., citing Smith v. Provin, 4 Allen 516 (1862) ("condition" requiring strict compliance was recording of affidavit of sale within one year after foreclosure sale); Roarty v. Mitchell, 7 Gray 243 (1856) (strict compliance required by "condition" that mortgagee enter and take possession of land before foreclosure sale); and Foster v. Boston, 133 Mass. 143 (1882) (similar to Roarty v. Mitchell, supra).

power of sale may be invoked only if the default is not cured within the time specified in the notice of default.  In this regard, we agree with the plaintiffs that the "terms of the mortgage" with which strict compliance is required -- both as a matter of common law under this court's decisions and under § 21[15] -- include not only the provisions in paragraph 22 relating to the foreclosure sale itself, but also the provisions requiring and prescribing the preforeclosure notice of default. See Foster, Hall & Adams Co., 213 Mass. at 322-324.[16]

---

[15] Wilion argues that the plaintiffs waived any claim that § 21 requires strict compliance with certain terms of a mortgage as a condition precedent to a valid foreclosure sale by failing to raise this issue in their opening appellate brief.  We disagree.  The defendants themselves put § 21 in play through their contention that the court's reading of § 21 in U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421 (2014) (Schumacher), signifies that strict compliance by Emigrant with the notice of default provision in paragraph 22 was unnecessary.  At the very least, the plaintiffs were entitled to respond to this argument. We discuss the Schumacher case, infra.

[16] Strict compliance with paragraph 22 is especially important given the origins of the paragraph's provisions and the fact that Massachusetts is a nonjudicial foreclosure State. The plaintiffs' mortgage with Emigrant is documented by the standard form mortgage provided by the Federal National Mortgage Association (Fannie Mae) and Federal Home Loan Mortgage Corporation (Freddie Mac).  Fannie Mae and Freddie Mac are government-sponsored enterprises that purchase and securitize residential mortgage loans, see Forrester, Fannie Mae/Freddie Mac Uniform Mortgage Instruments:  The Forgotten Benefit to Homeowners, 72 Mo. L. Rev. 1077, 1078, 1082 (2007), and "together [they] provide the largest source of home mortgage financing in the nation."  Id. at 1082.  Because both enterprises "require that loans they purchase be documented on their forms," the use of their standard mortgage form is "widespread."  Id. at 1085-1086.  The standard form mortgage

Because the plaintiffs entered into their mortgage with Emigrant in Massachusetts, a nonjudicial foreclosure State, the default provision in paragraph 22 of their mortgage provided that Emigrant's notice regarding the plaintiffs' default and right to cure had to inform the plaintiffs of "the right to bring a court action to assert the non-existence of a default or any other defense of [the plaintiffs] to acceleration and sale" (emphasis added). See Beaton v. Land Court, 367 Mass. 385, 392-393 (1975) (discussing mortgagor's avenues of relief from foreclosure through court actions). The language that Emigrant used in the default notice that it actually sent to the plaintiffs -- that the plaintiffs "have the right to assert in any lawsuit for foreclosure and sale the nonexistence of a default or any other defense [they] may have to acceleration and

_____

contains several uniform covenants that are applicable in every State, as well as nonuniform covenants "designed to fit the requirements and procedure in each of the [S]tates." See Jensen, Mortgage Standardization: History of Interaction of Economics, Consumerism and Governmental Pressure, 7 Real Prop. Prob. & Tr. J. 397, 400 (1972). Paragraph 22 qualifies as a nonuniform covenant because some States have judicial foreclosure systems while others, including Massachusetts, offer a nonjudicial foreclosure procedure. Paragraph 22 was added to the standard form mortgage at the urging of consumer advocates for borrowers. See id. at 410, 414. Its provisions were intended specifically to give homeowners increased protection from acceleration and foreclosure sale without prior notice in both judicial foreclosure and nonjudicial foreclosure States. See id. at 402-403, 409, 414. Declining to require strict compliance with paragraph 22 would weaken if not defeat the consumer protection purpose of the paragraph's provisions.

foreclosure and sale" (emphasis added) -- presumably would comply with the requirements of paragraph 22 in a judicial foreclosure State,[17] but not in Massachusetts.  If, as the defendants argue, "substantial compliance" with paragraph 22 were sufficient, and if the erroneous information sent to the plaintiffs constituted substantial compliance, it is obvious that Massachusetts mortgagors, including the plaintiffs, could be misled into thinking that they had no need to initiate a preforeclosure action against the mortgagee but could wait to advance a challenge or defense to foreclosure as a response to a lawsuit initiated by the mortgagee -- even though, as a practical matter, such a lawsuit would never be brought.[18,19]  It

---

[17] For example, the nonuniform covenant in paragraph 22 of the standard form mortgage for mortgages executed in Florida, a judicial foreclosure State, provides that a lender's right-to-cure notice must inform the borrower of "the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure" (emphasis added).  Florida -- Single Family -- Fannie Mae/Freddie Mac Uniform Instrument, Form 3010.  See Orlando Hyatt Assocs., Ltd. v. Federal Deposit Ins. Corp., 629 So. 2d 975, 977 (Fla. Dist. Ct. App. 1993).

[18] Under this court's decisions to date, the action that a mortgagee in Massachusetts must file to determine whether the mortgagor is protected by the Servicemembers Civil Relief Act is not considered part of mortgage foreclosure proceedings, and a mortgagor has no right to challenge the validity of a foreclosure sale as a response to such an action.  See, e.g., Eaton, 462 Mass. at 580 n.14; Beaton v. Land Court, 367 Mass. 385, 390 (1975).

[19] See Sullivan vs. Bank of New York Mellon Corp., U.S. Dist. Ct., No. 14-14074-MGM (D. Mass. Mar. 19, 2015), in which

is hardly unfair or burdensome to require a mortgagee such as Emigrant to comply with the provisions of paragraph 22 in one of its own mortgages by sending a notice that conforms to the language of the paragraph.  Given this, we find no compelling reason to bless a notice of default that fails accurately to notify Massachusetts mortgagors of their right, and need, to initiate a legal action if they seek to challenge the validity of the foreclosure.[20]

Nevertheless, the defendants argue that our decision in Schumacher, 467 Mass. 421, controls the result in this case and signifies that strict compliance with paragraph 22 is not

---

the court concluded, for essentially the same reasons as just stated in the text, that a notice of default stating that a Massachusetts mortgagor "will have an opportunity to assert a defense to acceleration or foreclosure 'in the foreclosure proceeding'" did not constitute substantial compliance with paragraph 22.

[20] The defendants' assertion that the plaintiffs in this case were not prejudiced by any failure to comply with the provisions of paragraph 22 misses the point.  Paragraph 22 demands strict compliance, regardless of the existence, or not, of prejudice to a particular mortgagor.  See Foster, Hall & Adams Co., 213 Mass. at 323 ("The fact, if it was a fact, that the written notice which by the terms of the power of sale had to be given, would not have served any useful purpose is not an answer to the objection that the power [of sale] was not duly complied with").  Cf. Ibanez, 458 Mass. at 655 (Cordy, J., concurring) (lack of "actual unfairness" to mortgagors resulting from foreclosing banks' failure to establish status as assignee of mortgages "is not the point," because "[f]oreclosure is a powerful act with significant consequences, and Massachusetts law has always required that it proceed strictly in accord with the statutes that govern it").

required as a condition of a valid foreclosure sale.[21]  In

Schumacher, the mortgagor, who was in default, received a notice

of default from a mortgage servicer that inaccurately identified

the current mortgagee, id. at 423-424; the mortgagor argued that

this false identification resulted in a failure to satisfy the

requirements of G. L. c. 244, § 35A, and invalidated the

subsequent foreclosure sale of his property.[22]  Id. at 427-428.

The legal issue presented on appeal was "whether § 35A is part

of the foreclosure process itself and, if so, whether a

mortgagee's failure to comply strictly with its provisions,

particularly the notice requirements, renders a foreclosure sale

void."  Id. at 422.  Resolution of this issue required

consideration of § 35A in relation to the statutory power of

sale in § 21, and in particular § 21's provision that upon

---

[21] The dissent agrees with the defendants that Schumacher controls the outcome here, but for reasons different from those that the defendants advance.  Post at    ,    .  We discuss the points raised by the dissent, infra.

[22] General Laws c. 244, § 35A (§ 35A), enacted by St. 2007, c. 206, § 11, prohibited acceleration of a residential property mortgage obligation or enforcement of such a mortgage due to a default "until at least [ninety] days after the date a written notice is given by the mortgagee to the mortgagor."  G. L. c. 244, § 35A (b).  The statute was amended and substantially rewritten in 2010, at which time the notice period before acceleration could occur was enlarged to 150 days, and a provision was added requiring, among other things, that the mortgagee (creditor) "engage[] in a good faith effort to negotiate a commercially reasonable alternative to foreclosure."  G. L. c. 244, § 35A (b), (g), as amended by St. 2010, c. 258, § 7.

default a mortgagee may sell the mortgaged premises, but only after first complying "with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" (emphasis in original). Schumacher, 467 Mass. at 430, quoting G. L. c. 183, § 21. The mortgagor in Schumacher contended that § 35A was such a statute and, accordingly, that the mortgagee was obligated to comply fully with § 35A's provisions as a condition of a valid foreclosure sale. Schumacher, supra. We disagreed. We noted the statutes that have been identified as governing the power of sale, see id. at 429, but concluded that § 35A had a different purpose. Id. at 431. In particular, § 35A was specifically designed to protect existing and new homeowners by giving them a reasonably generous period of time to cure a default without loan acceleration and the threat of foreclosure. See id. at 430-431. As such, we held, § 35A was "not one of the statutes 'relating to the foreclosure of mortgages by the exercise of a power of sale.'" Id. at 431, quoting G. L. c. 183, § 21. We concluded, therefore, that strict or exact compliance with all the provisions of § 35A was not a prerequisite of a valid foreclosure. Schumacher, supra at 430-431.

We recognize, as the defendants argue, that there are substantive similarities between § 35A and paragraph 22: both require notice of default, of the right to cure, of the deadline

by which the default must be cured, and that failure to cure the default may result in acceleration and foreclosure by sale. But we disagree that Schumacher controls in this case, and signifies that a mortgagee need not comply strictly with paragraph 22. This is so because the notice provisions in paragraph 22 are "terms of the mortgage," not terms of a statute "relating to the foreclosure of mortgages by the exercise of a power of sale." G. L. c. 183, § 21. See Wells Fargo Bank, N.A. v. Cook, 87 Mass. App. Ct. 382, 389-390 (2015) (Schumacher does not control where issue is whether mortgagee must comply with certain terms of mortgage as opposed to statute relating to foreclosure).

As Schumacher, 467 Mass. at 429, suggests, there is a well-established set of statutes relating to mortgage foreclosures effected pursuant to a power of sale: § 21 and G. L. c. 244, §§ 11-17C. See Eaton, 462 Mass. at 581 ("In addition to G. L. c. 183, § 21, itself, the 'statutes relating to the foreclosure of mortgages by the exercise of a power of sale,' id., are set out in G. L. c. 244, §§ 11-17C"); Ibanez, 458 Mass. at 646 (power of sale in mortgage includes reference to G. L. c. 183, § 21, and is "further regulated by G. L. c. 244, §§ 11-17C"). Each of the statutes included within G. L. c. 244, §§ 11-17C, pertains to the process and mechanics of the foreclosure sale itself. But as the discussion supra reflects, our cases concerned with mortgage terms requiring strict compliance have

never identified a specific set of such terms, and have not limited the need for strict compliance to terms concerned directly with the foreclosure sale itself. Rather, they have taken a more flexible approach. Accordingly, although § 21 requires in the same sentence a foreclosing mortgagee to comply with both "the terms of the mortgage" and with "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale," we read each of these requirements as being separately grounded and having an independent meaning. The fact that § 21 does not incorporate § 35A into the fixed set of foreclosure sale statutes demanding strict compliance does not mean that strict compliance with the notice provisions in paragraph 22 is not required. In sum, Schumacher does not alter our conclusion that, in the Emigrant mortgage instrument executed by the plaintiffs, the provisions of paragraph 22 constitute "terms of the mortgage" governing the power of sale, and that, in order to conduct a valid foreclosure, Emigrant was obligated to comply strictly with paragraph 22's notice of default provisions.

Given our conclusion, the question presents itself whether Emigrant's failure to comply strictly with the default notice provisions of paragraph 22 renders the title obtained by Wilion as a result of the subsequent foreclosure sale voidable rather

than void.[23]   See Chace v. Morse, 189 Mass. 559, 561-562 (1905),

and cases cited.  As the court observed in Chace, this is not

always an easy question to answer:

> "The distinction between the two classes of cases
> [void and voidable] has not been very clearly defined, and
> the decisions in the different jurisdictions do not
> entirely agree.  It has repeatedly been said that in order
> to make a valid sale under a power in a mortgage, the terms
> of the power must be strictly complied with.  Roarty v.
> Mitchell, 7 Gray, 243 [(1856)]; Smith v. Provin, 4 Allen,
> 516 [(1862)] . . . .  Where the sale is to foreclose a
> mortgage for a breach of the condition, there is no
> authority to sell unless there is a breach, and an
> attempted sale would be without effect upon the right of
> redemption.  So, where a certain notice is prescribed, a
> sale without any notice, or upon a notice, lacking the
> essential requirements of the written power, would be void
> as a proceeding for foreclosure.  Moore v. Dick, 187 Mass.
> 207 [(1905)].  But if everything is done upon which
> jurisdiction and authority to make a sale depend,
> irregularities in the manner of doing it, or in the
> subsequent proceedings, which may affect injuriously the
> rights of the mortgagor, do not necessarily render the sale
> a nullity.  The sale will be invalid so far as to enable
> the mortgagor, or perhaps the purchaser, to avoid it, and
> still be effectual if all the parties interested desire to
> have it stand."

Id.  See Bevilacqua v. Rodriguez, 460 Mass. 762, 778 (2011)

("Generally, the key question in this regard is whether the

transaction is void, in which case it is a nullity such that

title never left possession of the original owner, or merely

---

[23] The defendants do not address the question, presumably because their position is that the foreclosure sale was not flawed in any respect, and that therefore Wilion holds valid title to the property.  The question, however, is the focus of the dissent.

voidable, in which case a bona fide purchaser may take good title").

As the quoted passage from Chace, supra, suggests, a bona fide purchaser's "title is not to be affected by mere irregularities in executing a power of sale contained in a mortgage, of which irregularities he has no knowledge, actual or constructive." Rogers, 169 Mass. at 183-184. As applied to this case, therefore, the question of void versus voidable may be reframed to ask whether the failure of Emigrant, as the mortgagee, to send the plaintiffs a notice of default providing the actual information required by the terms of the mortgage concerning the plaintiffs' right "to bring a court action" in order to raise any defense to the foreclosure sale is a "mere irregularity" that does not affect the validity of the property's title. As previously discussed, in a nonjudicial foreclosure jurisdiction like Massachusetts, misstating this information in a way to suggest that a mortgagor with a defense does not need to initiate a lawsuit but may wait to respond to a foreclosure lawsuit filed by the mortgagee can have disastrous consequences for the mortgagor: if the mortgagor has a valid defense to the foreclosure sale going forward, but is not made aware that he or she must initiate an action in court against the mortgagee to raise that defense, the sale may well proceed and result in title passing to a bona fide purchaser without

knowledge of the issue -- at which point, and depending on the nature of the defense, the mortgagor's right to redeem his or her home may well be lost. See Bevilacqua, 460 Mass. at 777-778.[24] Emigrant's failure to provide the required and correct information on this point in the notice of default cannot fairly be described as a "mere irregularit[y] in executing a power of sale contained in a mortgage." Rogers, supra. Contrast Chace, 189 Mass. at 562. The failure renders the subsequent foreclosure sale to Wilion void.

---

[24] The statutory requirement that the mortgagee provide advance notice of default and the right to cure to the mortgagor, and include in the notice the offer to negotiate and agree "upon a commercially reasonable alternative to foreclosure," see G. L. c. 244, § 35A, as amended by St. 2010, c. 258, § 7, offers a good example of this point. This court's decision in Schumacher, 467 Mass. 421, establishes that § 35A is not one of the foreclosure statutes "relating to the foreclosure of mortgages by the exercise of a power of sale," G. L. c. 183, § 21, and therefore something other than strict compliance with § 35A will not render a foreclosure sale void, but merely voidable. See Schumacher, supra at 422, 430-431. If a mortgagor were not aware that he or she was required to bring an independent equity action in court before a foreclosure sale in order to challenge a mortgagee's compliance with § 35A and thereby stop the sale, the mortgagor might wait to assert the defense. In such a case, however, if the foreclosure sale proceeds and the property is purchased in good faith by another person, as the dissent in this case explains, see post at    ,    , the mortgagor would be limited to a contract action against the mortgagee, but will have completely lost the ability to keep his or her home, no matter how egregious the noncompliance with § 35A might have been; even if the mortgagee itself purchased the mortgage property at the foreclosure sale, the mortgagor's ability to "unwind" the sale is very limited. See Schumacher, supra at 433 (Gants, J., concurring).

The position taken by the dissent is that strict compliance by Emigrant with the notice of default provisions in paragraph 22 was required, but that Emigrant's failure to do so did not render the foreclosure sale void. See post at     . In the dissent's view, the result in this case is essentially controlled by our decision in Schumacher. See post at     . The dissent reasons that § 35A, the subject of Schumacher, and the notice of default provisions in paragraph 22 are birds of a feather in terms of purpose and operation; that for the same reasons Schumacher concludes § 35A was not a statute relating to the foreclosure by sale, so paragraph 22 is not a term of the mortgage concerned with foreclosure by sale; and, consequently, as was the case in Schumacher, Emigrant's defective notice of default rendered the foreclosure sale only voidable, not void.

We disagree.  The dissent fails to take into account the distinction -- reflected in our cases and in the language of § 21 -- between the "terms of the mortgage" instrument relating to foreclosure by exercise of the power of sale, and "statutes" relating to foreclosure by the power of sale.  But this distinction is a critical one.  As discussed previously, that § 35A is not one of the statutes relating to foreclosure by the power of sale to which § 21 refers does not answer whether the provisions of paragraph 22 qualify as "terms of the mortgage" relating and integrally connected to the power of sale under

§ 21. And as to that question, this court's decisions about mortgage terms indicate that by structure and content, the notice of default required to be given under paragraph 22 is integrally connected, and operates as a prerequisite, to the proper exercise of the mortgage instrument's power of sale. Emigrant's strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid; Emigrant's failure to strictly comply rendered which sale void.

We turn to the question whether our decision in this case should be given prospective effect only, because the failure of a mortgagee to provide the mortgagor with the notice of default required by the mortgage is not a matter of record and, therefore, where there is a foreclosure sale in a title chain, ascertaining whether clear record title exists may not be possible. We confronted the same issue in Eaton, 462 Mass. at 586-587. As Eaton also indicates, in the property law context, we have been more willing to apply our decisions prospectively than in other contexts. See id. at 588. We conclude that in this case, because of the possible impact that our decision may have on the validity of titles, it is appropriate to give our decision prospective effect only: it will apply to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph 22 or its equivalent and for which

the notice of default required by paragraph 22 is sent after the date of this opinion. As in Eaton, however, and for the reasons stated there, we will apply our ruling to the parties in the present case. See id. at 589, and cases cited.[25]

The dissent questions the efficacy of prospective relief to alleviate the consequences of this decision for future purchasers because there is no requirement that in the case of a standard mortgage instrument containing paragraph 22 (see note 16, supra), a foreclosing mortgagee record the notice of default sent to the mortgagor pursuant to that paragraph. Post at . There may not be a statutory requirement at this time, but a mortgagee remains free to execute and then record an affidavit of compliance with the notice provisions of paragraph 22 that includes a copy of the notice that was sent to the mortgagor pursuant to that paragraph, and we presume that going forward, as a general matter, mortgagees will do so. See G. L. c. 183, § 5B.[26]

---

[25] The parties have not argued, and we do not reach, the question whether our holding in this case should be applied to any other class of cases pending on appeal. See Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 167-170 (2014).

[26] General Laws c. 183, § 5B, provides in relevant part:

"[A]n affidavit made by a person claiming to have personal knowledge of the facts therein stated and containing a certificate by an attorney at law that the facts stated in the affidavit are relevant to the title to certain land and

3.  Mortgage and note.  Given our conclusion that the foreclosure sale was void, we need not decide the plaintiffs' alternative claim that the motion judge erred in allowing Wilion's motion for summary judgment because there was a genuine issue of material fact in dispute concerning whether Emigrant was actually the mortgagee at the time of the foreclosure sale or had previously assigned the mortgage to ESB-MH.

Conclusion.  The declaratory judgment of the Superior Court and the orders allowing Wilion's motion for summary judgment and dismissing the plaintiffs' complaint are reversed.  The case is remanded to the Superior Court for proceedings consistent with this opinion.

So ordered.

---

will be of benefit and assistance in clarifying the chain of title may be filed for record and shall be recorded in the registry of deeds where the land or any part thereof lies."

It bears noting that G. L. c. 244, § 35A, has required since 2010 that a foreclosing creditor in certain circumstances file an affidavit of compliance with that section in the Land Court, see § 35A (f), as inserted by St. 2010, c. 258, § 7; and that as of January 1, 2016, § 35A will require a foreclosing mortgagee to file a copy of the notice mandated by § 35A and "an affidavit demonstrating compliance" with § 35A, and also file a copy of the § 35A notice with the Commissioner of Banks.  See G. L. c. 244, § 35A (e) & (f), as amended by St. 2010, c. 258, § 8.

CORDY, J. (dissenting, with whom Gants, C.J., and Spina, J., join).  In U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 431 (2014) (Schumacher), we explained that the fact "[t]hat a mortgagee is prohibited from accelerating the maturity of the unpaid balance of the mortgage during the ninety-day cure period is a clear indication that foreclosure proceedings do not commence with the issuance of the written notice [required by G. L. c. 244, § 35A (§ 35A)]."  Today the court reaches the opposite conclusion regarding a substantially similar notice required by a mortgage instrument.  Because there is no sound basis for this distinction, which will have disruptive and unfair consequences for innocent third-party purchasers for years to come, I would conclude that the notice required by paragraph 22 of the mortgage instrument was not a component of the power of sale and, as a result, the defect therein rendered the foreclosure sale voidable rather than void.

The distinction between void and voidable foreclosure sales is one of profound significance for mortgagors, mortgagees, and subsequent purchasers of foreclosed property.  Where a foreclosure sale is void, no title passes to the purchaser or the purchaser's successors.  Rogers v. Barnes, 169 Mass. 179, 184 (1897).  Such a result is particularly concerning where, as here, the defect is contained in a notice that is not required

to be recorded.  Practically speaking, this means that a mortgagor may successfully unwind sales to innocent third parties years after the foreclosure, when the property has been conveyed to bona fide purchasers two, three, or four times removed from the foreclosure sale.  See, e.g., Moore v. Dick, 187 Mass. 207, 212-213 (1905) (mortgagor redeemed property nineteen years after void foreclosure sale).

Conversely, where a foreclosure sale is voidable, legal title passes to the purchaser, Bevilacqua v. Rodriguez, 460 Mass. 762, 777-778 (2011), and a mortgagor may unwind the sale only by showing that the defect "rendered the foreclosure so fundamentally unfair that she is entitled to affirmative equitable relief."  Schumacher, 467 Mass. at 433 (Gants, J., concurring).  The mortgagor may obtain such relief against the mortgagee and purchasers having notice of the defect, but she will not prevail in equity against a bona fide purchaser.  See Restatement (Third) of Property (Mortgages) § 3.2 comment g (1997) ("a bona fide purchaser of legal title terminates equitable rights").  "The question in such cases [involving bona fide purchasers] is which of two innocent persons should suffer a loss which must be borne by one of them.  The principle which is applied in courts of equity is that they will not throw the loss upon a person who has innocently acquired title to property for value.  The bona fide purchaser is not only entitled to

retain the property free of trust, but he is under no personal liability for its value." Restatement (First) of Restitution § 172 comment a (1937).

In discerning whether a foreclosure sale is void or voidable, "we adhere to the familiar rule that 'one who sells under a power [of sale] must follow strictly its terms. If he fails to do so, there is no valid execution of the power, and the sale is wholly void.'" U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 646 (2011) (Ibanez), quoting Moore, 187 Mass. at 211. The terms integral to the power of sale include the existence of a default or breach of the mortgage, Rogers, 169 Mass. at 184; assignment of the mortgage at the time of foreclosure, Ibanez, supra at 648; assignment of the note or authority to act on behalf of the note holder at the time of foreclosure, Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 584-586 (2012); proper advertisement of the foreclosure sale, McGreevey v. Charlestown Five Cents Sav. Bank, 294 Mass. 480, 483-484 (1936); and execution of the foreclosure sale on or near the premises, Tamburello v. Monahan, 321 Mass. 445, 446-447 (1947).

If, on the other hand, "there has been a literal compliance with the power, so that the legal title to the land passed to the purchaser, but for some reason as, for instance, a failure to act with due fidelity to the trust imposed by the power, there are equitable reasons why the sale should be set aside[,]

. . . the sale, being in law valid, is voidable only in equity, and the owner of the right to redeem must apply for relief in equity within a reasonable time."  Moore, 187 Mass. at 212. Another circumstance in which a foreclosure sale may be deemed voidable in equity, rather than void ab initio, arises where a mortgagee fails to comply with a term of the mortgage that is not part of the power of sale.  See Wayne Inv. Corp. v. Abbott, 350 Mass. 775, 775 (1966) ("Legal title is established in summary process by proof that the title was acquired strictly according to the power of sale provided in the mortgage; and that alone is subject to challenge.  If there are other grounds to set aside the foreclosure the defendants must seek affirmative relief in equity").  One such term is a preacceleration notice of default.  Cf. Schumacher, 467 Mass. at 432-433 (Gants, J., concurring) (defect in statutory notice of default not related to exercise of power of sale rendered foreclosure sale voidable in equity).

In Schumacher, we explained that a "homeowner's right to cure a default is a preforeclosure undertaking that, when satisfied, eliminates the default and wholly precludes the initiation of foreclosure proceedings in the first instance, thereby protecting and preserving home ownership."  Id. at 431. Accordingly, we observed that the notice required by § 35A was "designed to give a mortgagor a fair opportunity to cure a

default before the debt is accelerated and before the foreclosure process is commenced through invocation of the power of sale."  Id.  In light of this purpose, we concluded that § 35A was "not one of the statutes 'relating to the foreclosure of mortgages by the exercise of a power of sale,'" id., quoting G. L. c. 183, § 21, and, thus, the failure to strictly comply with § 35A rendered the foreclosure sale voidable rather than void.  Schumacher, supra at 433 (Gants, J., concurring).

Here, paragraph 22 fulfils the same purpose and operates in the same manner as § 35A.  As the court recognizes, the purpose of paragraph 22 is to give homeowners increased protection from acceleration and foreclosure without prior notice.  See generally Forrester, Fannie Mae/Freddie Mac Uniform Mortgage Instruments:  The Forgotten Benefit to Homeowners, 72 Mo. L. Rev. 1077, 1090 (2007); Jensen, Mortgage Standardization: History of Interaction of Economics, Consumerism and Governmental Pressure, 7 Real Prop. Prob. & Tr. J. 397, 409, 414 (1972).  In view of the similarities in purpose and effect, it would defy logic to hold that, on the one hand, the notice required by § 35A is not related to the exercise of the power of sale, but, on the other hand, the notice required by paragraph

22 is related to the exercise of the power of sale.[1]  Yet, that is precisely what the court holds in this case.

The court reaches this holding by advancing a new and expansive interpretation of our decision in Foster, Hall & Adams Co. v. Sayles, 213 Mass. 319 (1913).  The question in Foster, Hall & Adams Co. was not, however, whether the foreclosure sale was void, but whether there was reasonable doubt as to the title offered by the defendant.  Id. at 322.  A doubt as to title is reasonable if it "would cause a prudent man to pause and

---

[1] The court suggests that this observation fails to grapple with the distinction between the terms of the mortgage instrument and the statutes relating to foreclosure by the power of sale.  That is simply not true.  On the one hand, the court recognizes that the valid exercise of the power of sale does not depend on the mortgagee's "punctilious performance of every single mortgage term," but only those "integrally connected" to the power of sale.  See ante at    ,    .  On the other hand, however, the court explains that the proof that the paragraph 22 notice is integrally connected to the power of sale is that -- unlike the notice required by G. L. c. 244, § 35A, as amended by St. 2010, c. 258, § 7 (§ 35A) -- it is contained in the mortgage instrument.  See ante at    .  These positions cannot be squared.  A notice of default and the right to cure is either connected to the power of sale or it is not.  If placement in the mortgage is not dispositive of this connection, see ante at    , treating these notices differently requires some other rationale.  The inquiry into the purpose and operation of each notice confirms that such a rationale does not exist.  Section 35A provides, in relevant part, that the "mortgagee, or anyone holding thereunder, shall not . . . enforce the mortgage because of a default . . . until at least 150 days after the date a written notice is given by the mortgagee to the mortgagor."  If that language does not create a condition precedent or integral connection to the valid exercise of the power of sale -- and it does not, see U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 431 (2014) (Schumacher) -- the substantially similar language of paragraph 22 does not either.

hesitate before investing his money." Id. at 321, quoting First African Methodist Episcopal Soc'y v. Brown, 147 Mass. 296, 298 (1888). The court concluded that the mortgagee's complete failure to provide a notice of default created such a doubt. Foster, Hall & Adams Co., supra at 324.

It is important to appreciate the context in which the Foster, Hall & Adams Co. case arose, particularly the fact that the plaintiff was a buyer with notice of a potential title defect. Id. at 321-322. We have long said that "[t]he law goes a great way in protecting the title of a purchaser for value without notice or knowledge of any defect in the power of the vendor to sell." Bevilacqua, 460 Mass. at 777, quoting Rogers, 169 Mass. at 183. The law does not go a great way, however, in protecting the title of those who do have notice of defects in the seller's title. See Bevilacqua, supra at 778 ("a factual prerequisite -- purchase by [the plaintiff] without notice of the defects in [the mortgagee's] title -- does not exist").

The upshot is that, had the plaintiff in Foster, Hall & Adams Co. gone forward with the transaction, it would have been unprotected by bona fide status had the foreclosure sale later been set aside as a result of the defect. It was unnecessary to decide whether the foreclosure sale was void or voidable because, in either circumstance, the complete failure to provide a notice of default and the right to cure would have created a

reasonable doubt as to the title being taken by the plaintiff. We have never interpreted this century-old case to mean that any defect in a notice of default required by a mortgage instrument renders a foreclosure sale void ab initio, cf. Costello v. Tasker, 227 Mass. 220, 223 (1917), citing Foster, Hall & Adams Co., supra at 321 ("plaintiffs having failed to prove that the title tendered by the bill will not expose the defendants to litigation, the decree dismissing the bill should be affirmed"), and in light of the harsh consequences that such an interpretation would have for bona fide purchasers, the court should decline to do so here.

The prospective character of the court's ruling does little to alleviate these consequences for future purchasers because the paragraph 22 notice is not required to be recorded. Consequently, the notice ordinarily will not be discovered during an examination of the record title. Although some prospective purchasers may be able to obtain copies of the notice by scouring the documents filed in the Land Court in connection with Servicemembers Civil Relief Act (SCRA) proceedings, an SCRA action is not part of the mortgage foreclosure proceedings and does not create a basis for a mortgagor to challenge the validity of foreclosure sale. See Eaton, 462 Mass. at 580 n.14. See also Beaton v. Land Court, 367 Mass. 385, 390 (1975). Moreover, requiring purchasers to

engage in such a treasure hunt is contrary to the purposes of the recording system, which was intended to be "self-operative and to notify purchasers of existing claims . . . [through] a public record from which prospective purchasers of interests in real property may ascertain the existence of prior claims that might affect their interests." Selectmen of Hanson v. Lindsay, 444 Mass. 502, 507 (2005), quoting 14 R. Powell, Real Property § 82.01[3], at 82-14 (M. Wolf ed. 2000).

Although holding that a paragraph 22 notice defect renders the sale voidable would mean that a mortgagor could not defeat a bona fide purchaser by virtue of the defect, the mortgagor would nonetheless retain the ability to defeat a bona fide purchaser (and the mortgagee) on any of the substantive grounds relating to the exercise of the power of sale. For example, in this case, the plaintiffs argue that Emigrant Mortgage Company, Inc. (Emigrant), transferred the mortgage and note prior to the foreclosure and therefore lacked the authority to foreclose. The court does not reach this argument, but if the plaintiffs were to prevail on it, they would defeat Harold Wilion's summary process action because the foreclosure sale would be void as a matter of law -- irrespective of the paragraph 22 issue.[2] See

---

[2] Indeed, the plaintiffs' delay in asserting their claims is better attributed to the five bankruptcy petitions they filed between September, 2010, and July, 2012, the most recent of which was dismissed after a judge in the United States

Eaton, 462 Mass. at 584-586; Ibanez, 458 Mass. at 647-648.  In other words, the fact that the plaintiffs did not receive notice that they had to initiate an action to assert this substantive claim did not undermine their ability to do so successfully.[3]

This is not to say, however, that the notice sent by Emigrant in this case was sufficient to fulfil its obligations under the mortgage instrument.  Our cases have required strict compliance with contractual provisions that call for notice of important rights adverse to the person required to provide the notice.  See, e.g., Sweeney v. Morey & Co., 279 Mass. 495, 500 (1932) ("There must be strict compliance with requirements . . . [that] relate to matters where the essential facts to be embodied in the notice are known to the person required to give the notice, and the notice is designed to draw the attention of

_____

Bankruptcy Court for the District of Massachusetts concluded that it was filed as "part of a scheme by [one of the plaintiffs in the instant action] to delay Emigrant and was filed without a reasonable prospect of saving the property from foreclosure." In re Leslie Phillips, U.S. Bankr. Ct., No. 12-15749-FJB, slip op. at 1, 3 (Bankr. D. Mass. Aug. 8, 2012).

[3] The court suggests that mortgagors would be prejudiced if, for example, the underlying substantive claim were a failure to give notice pursuant to § 35A.  The court reasons that if the mortgagor is not aware that she has to initiate an independent action to assert the § 35A defect, the sale to a bona fide purchaser would forever foreclose her from doing so because a § 35A defect renders the sale voidable rather than void.  Under this reasoning, however, holding that the paragraph 22 notice renders the sale void essentially creates a backdoor for the mortgagor to a defeat bona fide purchaser on § 35A grounds -- a result that is plainly at odds with the Schumacher case.

his adversary to those facts").  As the court points out, because the plaintiffs entered into their mortgage with Emigrant in Massachusetts, a nonjudicial foreclosure State, the language in paragraph 22 requiring Emigrant to inform the plaintiffs of "the right to bring a court action to assert the non-existence of a default or any other defense of [the plaintiffs] to acceleration and sale" was particularly important.  Therefore, I agree with the court that Emigrant was required to strictly comply with the provisions of paragraph 22.

Nonetheless, because, in my view, the notice required by paragraph 22 -- like the notice required by § 35A -- is not a component of the power of sale, a mortgagor who has received a defective notice should be required to establish that he or she was prejudiced by the defect.  Schumacher, 467 Mass. at 433 (Gants, J., concurring).  Once the property has been conveyed to a bona fide purchaser, however, the mortgagor is limited to either an action for breach of contract against the mortgagee or an action establishing that the foreclosure sale is void on some ground actually related to the exercise of the power of sale. See Bevilacqua, 460 Mass. at 778.  See also Beaton, 367 Mass. at 392-393 (discussing mortgagor's avenues of relief from foreclosure through court actions).  Because Wilion was a bona fide purchaser insulated from the voidable character of the foreclosure sale, I would conclude that the defect in the

paragraph 22 notice was insufficient to defeat his interest in the property.  Therefore, I respectfully dissent.