Krupp, Peter B., J.
After plaintiff Harold Wilion purchased certain residential property at 1643 Cambridge Street in Cambridge (“the property”) from defendant Emigrant Mortgage Company, Inc. (“Emigrant”) at a foreclosure sale, the Supreme Judicial Court found Emigrant’s foreclosure invalid because Emigrant had failed to comply with the notice of default provisions in the mortgage. Pinti v. Emigrant Mortgage Co., Inc. (“Pinti’), 472 Mass. 226, 231-44 (2015). This action followed. Plaintiff seeks to recover his costs and associated damages in connection with his purchase of the property, which Emigrant, it turned out, did not have the lawful right to convey. Before me are cross motions for summary judgment. After hearing, and consideration of the parties’ post-hearing submissions,[1] the plaintiffs motion is ALLOWED and defendant’s cross motion is DENIED.
BACKGROUND
In 2008, Linda Pinti and Lesley Phillips (together, “Pinti”) owned the properly. In March 2008, Pinti gave Emigrant a mortgage on the property in exchange for a loan. Pinti defaulted on the loan in December 2009 and Emigrant initiated foreclosure proceedings. On August 9, 2012, Emigrant held a foreclosure sale of the property. Plaintiff was the highest bidder. See generally Pinti, 472 Mass. at 227-29.
On August 9,2012, plaintiff and Emigrant executed a Memorandum of Sale (“the MOS”) for the property and plaintiff paid an initial $5,000 deposit. At argument, the parties agreed the MOS was drafted by Emigrant. The MOS defined Emigrant as “the Bank" and plaintiff as “Buyer.” As is relevant to this case, Section 6 of the MOS provides:
In the event the Bank for any reason cannot convey title to the Property as stipulated., the deposit, and if applicable, the balance of the purchase price, shall be refunded and all rights hereunder shall cease, and the Buyer shall have no recourse against the Bank, or its employees, agents and representatives, whether at law or in equity; provided, however, that Buyer shall have the election to accept such title as the Bank can deliver to the Property in its then condition and to pay therefore the purchase price without deduction, in which event the Bank shall convey such title. In the event of such election by Buyer, the Bank shall have no duly or obligation to remove any cloud or defect in title.
The Bank reserves the right to cancel this Memorandum in the event that. . . (d) as a result of claims asserted by third parties against the Bank or against the Property the Bank determines that it is not in the best interest of the Bank and/ or the mortgagors) to convey the Property to Buyer. In the event of such cancellation by the Bank, the deposit, and, if applicable, the balance of the purchase price, shall be refunded and all rights hereunder shall cease, and the Buyer shall have no recourse against the Bank, its employees, agents, attorneys or representatives, whether at law or in equity. (Emphasis added).
On September 10, 2012, Emigrant conveyed the property to plaintiff for the purchase price of $260,000. Pinti, 472 Mass, at 229.
After plaintiff purchased the property, Pinti remained at the properly. Plaintiff filed a summary process action for possession. In defense, Pinti challenged the validity of Emigrant’s foreclosure sale. In October 2013, the Superior Court upheld the foreclosure process and entered judgment in favor of plaintiff [31 Mass. L. Rptr. 528). Pinti appealed. In a decision dated July 17, 2015, a divided Supreme Judicial Court reversed, finding that Emigrant failed strictly to comply with the notice of default provision in the mortgage and therefore that the foreclosure sale was void. Pinti, 472 Mass, at 227, 232-42.
Finding himself divested of title to the property by the decision in Pinti, plaintiff sought to recover his damages from Emigrant.[2] On September 25, 2015, plaintiffs counsel sent a letter to Emigrant’s counsel demanding that Emigrant pay plaintiff the then-fair market value of the property, which he contended had appreciated considerably beyond the $260,000 purchase price, plus his out-of-pocket expenses incurred as a result of Emigrant’s invalid foreclosure of the property. When the parties were unable to reach an *596 agreement, on September 30, 2015, plaintiffs counsel demanded at least “that Emigrant refund the purchase price immediately, without any conditions and without any party releasing rights, claims or defenses.” According to plaintiffs counsel, plaintiff “is in desperate need of his funds that are being wrongly held by Emigrant.” In response, on October 2, 2015, Emigrant’s counsel requested plaintiffs address in order “to cut the check.” Plaintiffs counsel responded on the same day by providing plaintiffs address, directing Emigrant to send the check directly to plaintiff, and wrote: “To avoid any later confusion, I should again [s]ay that the receipt of this payment is without prejudice and without waiver of any rights or defenses of any party.”[3]
Emigrant sent plaintiff a check dated October 5, 2015 for $260,000 with a cover letter dated October 8, 2015.[4] The cover letter stated:
Emigrant is returning Mr. Wilion’s purchase funds in accordance with the terms of the Memorandum of Sale executed by Mr. Wilion on August 9, 2012. Pursuant to the terms of the Memorandum of Sale, the return of these monies constitutes full satisfaction of any obligations Emigrant may have had to Mr. Wilion, and he has no further recourse against [Emigrant].
Plaintiff cashed the check on October 14, 2015.
Two weeks later, plaintiff filed this action. Plaintiff brings claims for negligence, negligent misrepresentation, breach of contract and breach of warranty. Based on a largely stipulated record,[5] the parties each move for summary judgment. Emigrant argues the language of the MOS applies, it properly invoked the termination clause, and the MOS caps plaintiffs potential recovery at the purchase price. Plaintiff contends the MOS does not apply to this situation. Emigrant also argues plaintiffs claims are barred by principles of accord and satisfaction and equitable estoppel. I address each argument in turn.
DISCUSSION
I. The Summary Judgment Standard
Summary judgment is granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Each moving party must demonstrate the absence of a triable issue on its claim, and that the summary judgment record entitles it to judgment as a matter of law. Flesner v. Technical Commc'ns Corp., 410 Mass. 805, 808-09 (1991); Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989); see Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “[B]are assertions and conclusions . . . are not enough to withstand a well-pleaded motion for summary judgment.” Polaroid Corp. v. Rollins Envtl. Servs., Inc., 416 Mass. 684, 696 (1993).
II. The Memorandum of Sale
The MOS, in relevant part, contains two provisions under which the Bank may refund plaintiffs deposit and the balance of the purchase price and thereby avoid further recourse for damages suffered by plaintiff: (1) “[i]n the event the Bank for any reason cannot convey title to the Property as stipulated,” in which event the “Buyer shall have the election to accept such title as the Bank can deliver to the Property in its then condition and to pay therefore the purchase price without deduction”; or (2) “as a result of claims asserted by third parties against the Bank or against the Property” the Bank may “cancel” the MOS if “the Bank determines that it is not in the best interest of the Bank and/or the mortgagor(s) to convey the Property to Buyer.” These two provisions address very different scenarios. The first provision addresses the situation where the Bank is able to convey title in some measure, but not “as stipulated.” In such case, the Buyer has the election to accept such title as the Bank is able to deliver for the original purchase price.[6] The second provision, allowing the Bank to cancel the MOS, applies to a situation where the Bank is able to convey the Property to the Buyer, but “the Bank determines” it ought not do so.
Neither scenario is presented in this case. After the Supreme Judicial Court’s decision voiding the foreclosure sale, Emigrant had no title left to convey, and therefore nothing for plaintiff to elect to accept. Nor was Emigrant without fault. It was Emigrant that failed to comply with the notice of default provisions in the Pinti mortgage. The second provision is also inapplicable. It was not the Bank that made a decision that it was not in its best interest to convey the property when it sent its letter to plaintiffs attorney on October 8, 2015. The Supreme Judicial Court had already determined the Bank had no power to do so.
The Supreme Judicial Court decided that Emigrant’s foreclosure sale of the property was void because Emigrant failed to comply strictly with the notice of default provisions in the mortgage instrument. This failure by Emigrant was not known to plaintiff at the time he acquired the property. To say for purposes of title conveyance that the foreclosure sale was void and that no title passed to plaintiff, see, e.g., Pinti, 472 Mass. at 242, id. at 245 (Cordy, J., dissenting), does not negate the fact that Emigrant tried to convey title to plaintiff, plaintiff relied upon that conveyance, and allegedly did so to his detriment.
The MOS, which was drafted by Emigrant and was not negotiated by the parties, must be construed against Emigrant. Browning-Ferris Indus., Inc. v. Casella Waste Management of Massachusetts, Inc., 79 Mass.App.Ct. 300, 309 (2011). Had Emigrant wished to shift to plaintiff the risk that its own non-disclosed failure to comply with the notice provision in the Pinti mortgage instrument would ultimately void the conveyance, it could have done so expressly. Of course, it *597 is hard to imagine a buyer agreeing to take such risk, including pursuing an eviction action, improving the property, and paying for utilities, taxes and other expenses, under the cloud of never recouping those costs. On the facts of this case, the language of the MOS is no bar to plaintiff seeking to recover damages in excess of the purchase price of the property.
III. Accord and Satisfaction
Emigrant claims that the $260,000 check, which was cashed by plaintiff, constituted a full accord and satisfaction of the disputed claim by plaintiff against Emigrant. Whether there has been an accord and satisfaction of the debt is a question of fact, Champlin v. Jackson, 313 Mass. 487, 489 (1943), on which Emigrant bears the burden of proof. Id.; Williams v. B&K Med. Sys., Inc., 49 Mass.App.Ct. 563, 569 (2000).
It is well-settled in Massachusetts that acceptance of a payment, the value of which is indisputably owed, does not foreclose the recipient from pursuing further claims related to the debt. Cuddy v. A&E Mechanical, Inc., 53 Mass.App.Ct. 901, 901 (2001) (rescript), quoting Whittaker Chain Tread Co. v. Standard Auto Supply Co., 216 Mass. 204, 208 (1913). “The reason for the rule is that there is no consideration for the promise of the creditor to relinquish the excess due beyond the amountpaid.” Emerson v. Deming, 304 Mass. 478, 481 (1939). Thus, unless a debtor shows an agreement, supported by adequate consideration, that the undisputed sum satisfies an entire debt, the creditor may maintain an action regardless of accepting partial payment. See Id.
The Pinti ruling in 2015 rendered Emigrant’s transfer of the property void. By that time, however, plaintiff had already held the deed to the property for three years. Emigrant does not meaningfully dispute that under these circumstances it had to repay plaintiff the original purchase price of $260,000. Emigrant paid this undisputed sum to plaintiff by check on or about October 8, 2015. Though the parties disagree about whether Emigrant owes plaintiff more than $260,000, Massachusetts law clearly provides that Wilion’s acceptance of the undisputed $260,000 does not prevent him from asserting further claims, including, for example, interest on that amount. See Whittaker Chain Tread Co., 216 Mass. at 208 (debtor “has no right to impose” election on part of creditor to either refuse undisputed amount of debt payment or accept it in full satisfaction of claims).
The summary judgment record is also devoid of facts indicating that plaintiff understood and intended his acceptance of the proffered check would extinguish his additional claims or that any consideration was given to support the waiver of plaintiffs claims to additional damages. Cf. Wong v. Paisner, 14 Mass.App.Ct. 923, 924 (1982) (rescript) (where debtor paid plaintiff $1,000 undisputably owed and extra $500 to “appease” plaintiff, noting on check that defendant considered this “payment in full,” sufficient evidence to conclude offer of accord supported by consideration and plaintiff accepted debt as satisfied when cashing check). The record includes express communication by plaintiffs counsel that plaintiff did not consider repayment of the purchase price to constitute full satisfaction. Under these circumstances, the language included in Emigrant’s cover letter did not legally obligate plaintiff to either reject the $260,000 or forfeit any remaining claims against Emigrant.[7]
IV. Equitable Estoppel
Emigrant makes the creative argument that plaintiff should be equitably estopped from asserting his claims against it because he did not seek to terminate the MOS when, in connection with the prior litigation, he chose to defend his title. First, Emigrant cites no case supporting its position. Second, nothing in plaintiffs conduct was improper. Third, Emigrant points to no provision in the MOS that would allow plaintiff to terminate the MOS after the purchase and to recover his purchase price. To the contrary, the termination provisions in the MOS all run to Emigrant’s benefit. During the earlier litigation, Emigrant was privy to the same information known to plaintiff—indeed, it had knowledge that plaintiff did not have about the manner in which it had failed to comply with the notice of default provision in the Pinti mortgage—and it chose not to seek to terminate the MOS at that time. The equities run against Emigrant, not in its favor. Plaintiff is not equitably estopped from asserting his present claims against Emigrant.
ORDER
Plaintiffs Motion for Summary Judgment (Docket # 10) is ALLOWED. Defendant’s Cross Motion for Summary Judgment (Docket #11) is DENIED. The Clerk shall schedule a Final Pretrial Conference to address the resolution of the remaining issues in the case and to set a trial date.

 Defendant’s Supplemental Memorandum of Law in Opposition to the Plaintiffs Motion for Summary Judgment and in Support of the Defendant’s Cross Motion for Summary Judgment (Docket #14) and Plaintiffs Reply to EMC’s Supplemental Memorandum in Opposition to Plaintiffs Motion for Summary Judgment (Docket #15).

 The problem plaintiff confronted was recognized, and this action foreshadowed, by the dissent in Pinti: "Where a foreclosure sale is void, no title passes to the purchaser or the purchaser’s successors . . . Such a result is particularly concerning where, as here, the defect is contained in a notice that is not required to be recorded. Practically speaking, this means that a mortgagor may successfully unwind sales to innocent third parties years after the foreclosure, when the property has been conveyed to bona fide purchasers two, three, or four times removed from the foreclosure sale.” 472 Mass, at 245 (Cordy, J., dissenting).

 Emigrant objects to the court considering the facts contained in this paragraph. See Defendant’s Motion to Strike the Plaintiffs Affidavit of Counsel Pocket #12), which seeks to strike the Affidavit of Counsel, and the correspondence attached thereto, which is provided as Exhibit H in the Joint Appendix to Motion for Summary Judgment. The motion to *598 strike objects to the court considering the correspondence before it issued the check for $260,000, arguing it constitutes inadmissible settlement negotiations. I disagree. It relates directly to the parties’ understanding of why the $260,000 check was sent by Emigrant. Nor is such information hearsay. It is not considered by the court for the truth of the matter contained therein, but as it reflects on whether there was a meeting of the minds on the preclusive consequences of Emigrant issuing, and plaintiff cashing, the $260,000 check. Accordingly, I have denied the motion to strike.

 The parties stipulate to the facts set out in this sentence. I accept them as true for purposes of the motion for summary judgment. The cover letter, however, is addressed to plaintiffs counsel, does not reflect that it was copied to plaintiff directly, and does not indicate it contained an enclosure (i.e. the check). Plaintiffs counsel had previously provided plaintiffs address to Emigrant’s counsel and had asked that the check be sent to plaintiff directly. The check bears plaintiffs address and does not appear on its face to have been sent care of plaintiffs counsel. Other than the parties’ stipulation, I cannot tell from the summary judgment record whether the cover letter dated October 8, 2015 was sent to plaintiff by Emigrant, or was seen by plaintiff before he cashed the check.

 The issue of damages is not before me.

 Alternatively, the first part of this provision could be construed as an “escape clause” available only if, due to no fault by the Bank, the Bank is found to have defective title. See, e.g., DeLuca v. U.S. Bank N.A., 25 Mass. L. Rptr. 252, 2009 WL 839098 at *3 (Mar. 13, 2009) (Kern, J.) (and cases cited). This interpretation would not serve Emigrant well. In Pin.fi, the Court already ruled that the foreclosure sale was void and Emigrant was unable to convey title to plaintiff because Emigrant had not strictly adhered to the Pinti mortgage instrument’s notice of default provisions.

 Emigrant’s reliance on G.L.c. 106, §1-308 is misplaced. Even if the Uniform Commercial Code applied in this instance, it does not change the Massachusetts law of accord and satisfaction described above.